**Christine H. DE LAURENTIS,**
**Appellant,**

v.

**UNITED SERVICES AUTOMOBILE**
**ASSOCIATION a/k/a USAA,**
**Appellee.**

**No. 14–03–00164–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 31, 2005.

Sheila Lee Haddock, Roger A. Rider, Houston, for appellant.

Bruce E. Ramage, Dana T. Williams, Levon G. Hovnatanian, Houston, for appellee.

Panel consists of Justices HUDSON, FOWLER, and FROST.

## OPINION ON MOTION FOR REHEARING

KEM THOMPSON FROST, Justice.

We overrule appellant Christine de Laurentis's motion for rehearing. We withdraw the opinion issued in this case on September 30, 2004, and we issue the following opinion in its place.

This case arises from an insurance-coverage dispute between a policyholder who suffered mold damage to her apartment and an insurer who denied coverage under a renter's insurance policy. The policyholder sued the insurer asserting a breach-of-contract claim as well as various extracontractual claims. The trial court granted summary judgment in favor of the insurer. At issue is whether the policyholder's claim for mold damage that purportedly resulted from a leaking air conditioning unit in her apartment is covered under her renter's insurance policy. We find coverage for any such damage for which causation is ultimately established, and reverse and remand in part on this issue. However, we affirm the trial court's judgment as to the extracontractual claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August of 2000, appellant/plaintiff Christine H. de Laurentis ("Policyholder") purchased a renter's insurance policy from United Services Automobile Association a/k/a USAA ("Insurer"). The Insurer used a Texas Homeowner's Policy Form B–T ("HOB–T") in issuing the policy. The following month, the Policyholder discovered the air conditioning unit in her apartment was leaking water into the closet of her bedroom, and black mold was growing on one wall of the closet. The apartment complex purportedly repaired the leak and the damage.

In June of 2001, the Policyholder concluded that the mold had not been remediated and, in fact, had spread throughout her apartment. She filed a claim with the Insurer, seeking compensation under her renter's insurance policy for temporary residence and for remediation of her furniture, art work, clothing, and other personal belongings.

The Policyholder asked the City of Houston to test her apartment for mold in July of 2001. The ambient air in the Policyholder's apartment tested within the normal acceptable range. However, swab samples taken throughout the apartment isolated two fungal items: stachybotrys and penicillium. The Policyholder's belongings and the wall of her closet, which previously had exhibited mold, were not tested. A swab sample taken from another wall of the same closet showed no indications of mold.

In pursuing her claim, the Policyholder spoke to Brenda Essex, a representative of the Insurer, on two occasions before Essex sent a claims investigator to the Policyholder's apartment. Essex informed the Policyholder during both telephone conversations that her claim would be denied, stating as a basis for the denial that mold is not a named peril in the Policyholder's HOB–T policy. Candace Shook, a claims investigator for the Insurer, went to the Policyholder's apartment on July 19, 2001, and determined from the apartment complex that there had been a leak in the air conditioning system. While at the Policyholder's apartment, Shook acknowledged the claim, and on behalf of the Insurer, she offered to pay for what had been damaged by the water. Shook told the Policyholder during the inspection that the mold damage was specifically excluded by the HOB–T policy. That same day, Shook sent the Policyholder a letter reiterating that mold was specifically excluded by the HOB–T policy. However, in the letter Shook informed the Policyholder that the Insurer would pay for damage to any items that had gotten wet from the leak. Additionally, Shook's letter stated that, because the apartment complex had requested the Policyholder to move to another unit so that workers could make additional repairs necessitated by the water damage, the Insurer would cover the expenses associated with a move to another apartment. Shook subsequently sent another letter to the Policyholder's attorney, advising that the Insurer did not believe the HOB–T policy covered any damage that may have been caused by the mold. In order to process the Policyholder's claim, Shook sent a letter on August 30, 2001, requesting the Policyholder to provide an inventory of personal property damaged by water. The Policyholder did not provide an inventory.

The Policyholder sued the Insurer for breach of the insurance policy and asserted various extracontractual claims, including a claim for bad faith handling of her insurance claim. The parties filed cross-motions for summary judgment, each asking the trial court to interpret the relevant policy provisions as a matter of law. The Policyholder sought partial summary judgment on the issue of coverage; the Insurer sought dismissal of the Policyholder's breach-of-contract and extracontractual claims. The Insurer asserted the following grounds in its motion for final summary judgment:

(1) The Policyholder's failure to comply with the HOB–T policy conditions precludes coverage.

(2) The Policyholder's breach-of-contract claim fails as a matter of law because there is no coverage under the HOB–T policy for mold damage to the Policyholder's personal property.

(3) The Policyholder's deposition testimony shows that her extracontractual claims fail as a matter of law.

(4) The Policyholder's extracontractual claims are barred as a matter of law because a bona fide coverage dispute exists.

The trial court denied the Policyholder's motion, granted the parts of the Insurer's

motion seeking dismissal of the extracontractual claims, and denied the parts of the Insurer's motion seeking dismissal of the breach-of-contract claim. Both parties filed motions for reconsideration. In her motion for reconsideration, the Policyholder asked the trial court to set aside its dismissal of her extracontractual claims and to grant her prior motion for partial summary judgment as to her breach-of-contract claim. In its motion for reconsideration, the Insurer asked the trial court to stand by its dismissal of the extracontractual claims and to reverse its denial of the Insurer's motion for summary judgment as to the breach-of-contract claim, so as to grant final summary judgment in favor of the Insurer as to the Policyholder's claims. Upon reconsideration, the trial court vacated its previous order, granted the Insurer's motion for final summary judgment, and entered a final judgment dismissing all of the Policyholder's claims.[1]

## II. Issues Presented

On appeal, the Policyholder presents the following issues:

1. **Contract Interpretation.** The Policyholder's insurance contract provides coverage for a "physical loss" that is "caused by" the "accidental discharge, leakage or overflow of water" from an "air conditioning system" unless "the loss is specifically excluded." Did the trial court err in refusing to find coverage as a matter of law for mold damage the Policyholder claims was caused by an air conditioner water leak?

2. **Waiver of Condition Precedent.** May the Insurer avoid liability for wrongfully denying the Policyholder's claim simply because the Policyholder did not present an itemized list of damaged property when the Insurer rejected the Policyholder's claim immediately and without investigation, contending that mold was not a covered peril under the HOB–T policy?

3. **Extracontractual Claims.** If this court construes the policy language at issue to provide coverage for the Policyholder's claimed loss, is the Policyholder entitled to have her extracontractual claims considered by a jury because the issue presented—whether an insurer is liable in damages for denying a claim after its liability has become reasonably clear—is a question of fact rather than law? [2]

1. In her motion for rehearing, the Policyholder asserts for the first time that the trial court's final judgment did not dismiss her extracontractual claims on the merits but rather dismissed them as being moot based on the parties' motions for reconsideration. The Policyholder asserts that the trial court's judgment implicitly dismissed these claims as moot based on its granting of the Insurer's motion for summary judgment as to coverage with the understanding that the extracontractual claims would be revived automatically and reinstated upon reversal of the trial court's coverage ruling by an appellate court. However, nothing in the record, including the parties' arguments in their motions for reconsideration, indicates that the Policyholder ever nonsuited, conditionally withdrew, or asked the trial court to conditionally dismiss or abate her extracontractual claims. The trial court did withdraw its prior order and did state that its ruling was based, in part, on the parties' representations that there are no disputed issues of material fact in connection with the *breach-of-contract* claim. Nonetheless, based on the language of the trial court's judgment, we conclude that the trial court granted the Insurer's motion for final summary judgment, without specifying the grounds, and dismissed all of the Policyholder's claims on the merits, rather than on any alleged mootness ground.

2. The Policyholder casts her issue as being conditioned on this court's finding that the HOB–T policy provides coverage for her alleged loss. We interpret this issue to fairly include the same argument conditioned on a reversal of the trial court's summary judgment, even if that reversal does not include a

### III. STANDARD OF REVIEW

■ Although the Policyholder asks this court to review the trial court's denial of her motion for partial summary judgment, this ruling is not before us because that motion did not seek a final judgment. *See CU Lloyd's of Tex. v. Feldman*, 977 S.W.2d 568, 569 (Tex.1998) (stating that, before a court of appeals may review an order denying a cross-motion for summary judgment not covered by an interlocutory appeal statute, both parties must have sought final judgment in their cross-motions for summary judgment, unless an exception applies that is not applicable to the instant case).

■ In reviewing the Insurer's motion for summary judgment, we take as true all evidence favorable to the Policyholder, and we make all reasonable inferences in her favor. *See Dolcefino v. Randolph*, 19 S.W.3d 906, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). If the Insurer's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the Policyholder to raise a genuine, material fact issue sufficient to defeat summary judgment. *See id.* Because the trial court's order granting summary judgment does not specify the grounds for its ruling, we must affirm summary judgment if any of the summary-judgment grounds are meritorious. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000).

### IV. NON-WAIVER OF CONDITION PRECEDENT

In her second issue, the Policyholder asserts the trial court erred in granting summary judgment based on the Insurer's argument that, because the Policyholder

---

determination that the insurance policy provides coverage for the Policyholder's alleged

failed to comply with a condition precedent in her HOB-T policy, she is precluded from suing for breach of the insurance contract. Specifically, the Insurer states that the Policyholder failed to provide the company with a written inventory of the damaged personal property. The Insurer claims the Policyholder's failure prevented the Insurer from inspecting the damaged property and determining whether the Policyholder had sustained a physical loss from a named peril in her policy. The Policyholder argues that the evidence reflects the Insurer did not deny her claim because she failed to meet any condition precedent in the policy, but simply because she claimed her losses were mold-related.

The HOB-T policy, under the heading of "Section I—Conditions," and subheading of "Duties After Loss," states:

a. **Your Duties After Loss.** In case of a loss to covered property caused by a peril insured against, you must:

(1) give prompt written notice to us of the facts relating to the claim.

. . .

(4) furnish a complete inventory of damaged personal property showing the quantity, description and amount of loss. Attach all bills, receipts and related documents which you have that justify the figures in the inventory.

The Insurer's agents told the Policyholder that only water-damaged property—items that actually got wet—would be covered under the HOB-T policy. The Insurer admits its representatives told the Policyholder that her claim for recovery of mold-damaged property would be denied on the stated ground that mold was not a covered peril under her policy.

---

loss. *See* TEX.R.APP. P. 38.1(e).

■ The provisions of an insurance policy regarding an insured's duties after a loss are for the benefit of the insurance company. *See Sanders v. Aetna Life Ins. Co.*, 146 Tex. 169, 205 S.W.2d 43, 44–45 (1947) (discussing this principle in the context of notices and proofs of loss). But, an insurer's denial of a claim before the deadline for presenting the required proof of loss (or other documentation) waives that requirement as a matter of law. *Id.* (finding that, because the insurer denied the claim before the deadline to submit proofs of continued total and permanent disability, the insurer waived that requirement because nothing occurred after the denial that "would indicate to [the insured] that the submission of further proofs of loss would be more than an idle formality"); *see also North River Ins. Co. v. Pomerantz*, 492 S.W.2d 312, 313 (Tex.App.-Houston [14th Dist.] 1973, writ refused n.r.e.) (stating that "[a] denial of liability by the insurance company within the period allowed for filing proof of loss, on grounds other than the failure to submit proof of loss, constitutes waiver of this requirement"). However, "[i]t is a well-known principle in this class of cases that the acts relied on as constituting a waiver should be such as are reasonably calculated to make the assured believe that a compliance on his part with the stipulations providing the mode of proof of loss, and regulating the appraisement of the damage done, is not desired, and that it would be of no effect if observed by him." *Scottish Union & Nat'l Ins. Co. v. Clancey*, 83 Tex. 113, 18 S.W. 439, 440–41 (1892); *see also North River Ins. Co.*, 492 S.W.2d at 314. This court has held that it is of no consequence "whether the insurance company informs the insured that the claim absolutely will not be paid or simply indicates that it is not planning to pay the claim unless some new development arises." *See North River Ins. Co.*, 492 S.W.2d at

313. It is enough that the actions of the insurance company would reasonably lead the insured to believe that the company is not going to pay the claim because of some reason other than failure to file the required proof of loss. *Id.* at 314. The Insurer recognizes this rule of law, but contends it merely mentioned during oral conversations with the Policyholder that the HOB–T policy did not include mold as a named peril. The Insurer argues there is no evidence that it denied the Policyholder's claim under the named peril she was asserting-physical loss caused by the accidental discharge, leakage, or overflow of water from within an air conditioning system.

The record does not support the Insurer's argument. The Insurer's representatives told the Policyholder on multiple occasions that the claim for her mold-damaged property would be denied. Shook repeatedly informed the Policyholder that the Insurer would pay only for damaged items that actually got wet. Nothing in the record indicates the Policyholder reasonably would have considered the completion of the inventory to be anything more than an idle formality. The Insurer asserts that the Policyholder nonetheless should have completed and returned the inventory of loss its representative requested if the Policyholder truly believed that the mold was caused by leaking water and the alleged damage was thus covered under her HOB–T policy. Essentially, the Insurer argues that the Policyholder should have completed the inventory if she believed the claim to be covered despite the Insurer's unequivocal statements, both orally and in writing, that the claim would be denied.

■ Waiver of a condition precedent is evaluated according to what the insured reasonably would have thought under the circumstances. *Id.* For the reasons noted,

a reasonable policyholder would have considered the filing of an inventory an exercise in futility. Moreover, the inventory the Insurer sought was not a complete inventory of the Policyholder's damaged property, but an inventory of personal items that actually got wet, which logically would have excluded the property the Policyholder claimed was damaged by mold.

We conclude the Insurer waived the requirement for the personal property inventory when it informed the Policyholder that mold was not covered under her policy and that the Insurer would pay only for items that got wet. The condition precedent having been waived, the Policyholder is not barred from recovery in a suit for breach of the insurance contract. Accordingly, we sustain the Policyholder's second issue.

## V. Construction and Interpretation of The Policy

■■■ In her first issue, the Policyholder asserts the trial court erred in finding no coverage as a matter of law under the insurance policy.[3] Texas courts interpret insurance policies according to the rules of contract construction. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998). In applying these rules, our primary concern is to ascertain the parties' intent as expressed in the language of the policy. *See id.* at 464. In determining the intention of the parties, we look only within the four corners of the insurance agreement to see what is actually stated, not what was allegedly meant. *See Esquivel v. Murray Guard, Inc.*, 992 S.W.2d 536, 544 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). We must give effect to all contractual provisions so that none will be rendered meaningless. *Kel-*

*ley–Coppedge*, 980 S.W.2d at 464. If the policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous, and we construe it as a matter of law. *See id.* at 464; *cf. Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983) (holding that a contract is "ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning"). Whether a contract is ambiguous is a question of law. *Kelley–Coppedge*, 980 S.W.2d at 464. An ambiguity does not arise simply because the parties offer conflicting interpretations. *Id.* at 465.

### A. The Operative Policy Provisions

■■■ The Policyholder, as the insured, asserted a first-party claim under her HOB–T policy. A first-party claim sounds in contract and thus is determined by the terms of the insurance agreement between the insurer and the insured. Under the heading of "Section I—Perils Insured Against," and subheading of "Coverage B (Personal Property)," the insuring agreement states in pertinent part:

> We insure against physical loss to the property described in Section I Property Coverage B (Personal Property) caused by a peril listed below, unless the loss is specifically excluded....
>
> 9. **Accidental Discharge, Leakage or Overflow of Water or Steam** from within a plumbing, heating or air conditioning system or household appliance.

The parties dispute whether the policy language obligates the Insurer to pay the Policyholder for mold damage purportedly caused by a leaking air conditioning unit in the Policyholder's apartment. The Policy-

---

**3.** As stated above, to the extent the Policyholder asserts the trial court erred in refusing to find coverage as a matter of law and grant her motion for partial summary judgment, this issue is not before us. *See CU Lloyd's of Tex.*, 977 S.W.2d at 569.

holder contends the apartment's air conditioning system leaked and caused mold to grow and spread throughout her apartment. The mold allegedly damaged the Policyholder's personal belongings, furniture, art work, and clothing. Thus, she alleges facts that would trigger coverage if the HOB–T policy covers such damage.[4]

The Insurer contends the Policyholder's claim for purported mold damage to her personal property is not covered because no named peril for "mold" was included in her HOB–T policy. Therefore, the Insurer argues, the Policyholder's real claim is that mold—not the accidental discharge of water by the air conditioning system—caused her damage. Must mold be specifically identified as a named peril in the HOB–T policy for coverage to exist? Or, does coverage exist because the Policyholder alleges a "physical loss" caused by a peril named in the policy? To resolve this issue, we must determine the meaning of the operative policy language. No Texas court has addressed this precise issue in construing the language of the standard HOB–T policy.[5]

### B. The Meaning of the Policy Language[6]

The HOB–T policy is a named-perils policy that covers "physical loss to the property . . . caused by a named peril." It is helpful to our analysis to characterize the perils contributing to the loss and to determine which perils are covered and which are excluded. The accidental discharge, leakage, or overflow of water from within an air conditioning system is a named peril. Because the HOB–T policy is a named-perils policy, all perils not specifically included in the policy are excluded from coverage. *See Ingersoll–Rand Fin. Corp. v. Employers Ins. of Wausau*, 771 F.2d 910, 912 (5th Cir.1985) (applying Louisiana law).

If there is a single guiding principle that governs our interpretation of the insurance policy, it is to give effect to the parties' intent as expressed in the policy's

---

4. The Insurer argues in its appellate brief that the Policyholder never produced any summary-judgment evidence that proved or even implied (1) that any of the Policyholder's belongings were ever contaminated by mold; or (2) that the source of any mold contamination was the purported air conditioning leak. However, neither party presented the issue of causation to the trial court; thus, the Policyholder had no obligation to present causation evidence at that time. The Insurer acknowledged at oral argument that the issue presented to the trial court was whether the Policyholder's HOB–T policy would cover mold damage caused by a leaking air conditioning system, presuming the Policyholder is able to prove causation.

5. In this case, the parties rely on many cases addressing a mold exclusion clause and the definition of an "ensuing loss" provision, neither of which is at issue here. Thus, we conclude cases discussing the meaning of "ensuing loss" do not control our resolution of the issue now before us.

6. The Insurer filed a motion in this court asking us to strike an improper inclusion in the Policyholder's September 17, 2003 "Memorandum of Authorities." The memorandum contained an unsigned, unverified "Texas Department of Insurance Exempt Filing Notification" concerning the adoption of amendatory mandatory endorsements, which was not in the record. Our review is confined to the evidence in the appellate record. *See Sabine Offshore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex.1979). Furthermore, it is improper for parties to rely on matters outside the record in making arguments to the court. *See, e.g., Melendez v. Exxon Corp.*, 998 S.W.2d 266, 280 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (holding parties should confine their arguments and factual recitations to matters contained in the record). Therefore, we do not consider the improper item submitted by the Policyholder and confine our review to the appellate record.

plain language. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). The HOB–T policy does not define the terms "physical loss" or "caused by" so we look to the plain meaning of these undefined terms. "Loss" signifies "the act of losing or the thing lost; it is not a word of limited, hard and fast meaning and has been synonymous with or equivalent to, 'damage'...." BLACK'S LAW DICTIONARY 945 (6th ed.1990) (stating that "loss" in an insurance policy "means a state of fact of being lost or destroyed, ruin or destruction."). A physical loss is simply one that relates to natural or material things. *See* WEBSTER'S THIRD NEW INT'L DICT. 1706 (1993) (defining "physical" as "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary"). "Caused" is defined as "to serve as cause or occasion of: bring into existence: make," and "cause" is defined as "something that occasions or effects a result: ... something that ... produces a phenomenon." WEBSTER'S THIRD NEW INT'L DICT. at 356. Applying the plain meaning of the policy language, we conclude that the policy covers tangible damage to the Policyholder's personal property by water leaking from an air conditioning unit. Such water leaks can produce mold damage—a tangible loss to the Policyholder's personal property. Therefore, the policy's plain language, when read in context, giving effect to all contractual provisions, is unambiguous and requires payment for mold damage caused by a leaking air conditioning unit.

This plain-language interpretation is supported by case law. The Tenth Court of Appeals has discussed potential coverage under a different insurance policy by distinguishing between a "physical loss" and a "direct physical loss." *See Travelers Indem. Co. v. Jarrett*, 369 S.W.2d 653 (Tex.App.-Waco 1963, no writ). In *Travelers*, the court stated:

> Where insurance against property damage is only against "direct" loss by lightning it has been said the quoted term means "immediate" or "proximate," as distinguished from remote or incidental causes. But a provision insuring against "loss or damage caused by lightning" renders the insurer liable for all known effects of lightning, "and includes all loss or damage which results as a *direct and natural consequence* of the lightning, notwithstanding other incidental agencies may be incidental in adding to the loss or damage."

*Id.* at 655 (quoting 11 COUCH, INSURANCE 2D, §§ 42.355, 42.357) (emphasis added).[7] Thus, Texas courts have determined that a physical loss, as opposed to a direct physical loss, includes the natural consequences of the named peril. Additionally, the United States Supreme Court has determined that all consequences naturally flowing from a peril insured against are properly attributable to the peril. *Lanasa Fruit S.S. & Importing Co. v. Universal Ins. Co.*, 302 U.S. 556, 565, 58 S.Ct. 371, 375, 82 L.Ed. 422 (1938).

A case from the state of Washington illustrates this principle. *See Bowers v. Farmers Ins. Exch.*, 99 Wash.App. 41, 991 P.2d 734 (2000). In *Bowers*, the insurance company denied coverage for mold damage when the insured's rental house was damaged after tenants converted the house into a hothouse for growing marijuana. *Id.* at 735. As a part of the operation, all

---

**7.** The Insurer attempts to distinguish the *Travelers* case by arguing that the Policyholder has not demonstrated water was the actual cause of her mold damage. Again, causation was not an issue presented to the trial court; the relevant issue before the trial court was whether as a matter of law mold damage caused by a water leak would be covered under the HOB–T policy.

heat in the house was diverted to the basement. *Id.* at 736. As a result of the operation, mold grew throughout the house. *Id.* The insurance company refused to compensate the insured for her mold-related damage, contending mold was excluded under the policy. The insured argued that the cause of her damage was not the mold, but the vandalism of her tenants, a covered peril. The *Bowers* court held that "[h]ere, there can be no reasonable difference of opinion regarding the cause of [the insured's] loss. It was the tenants' acts, which 'in an unbroken sequence ... [produced] the result for which recovery is sought[.]' " *Id.* at 738.

The Insurer argues, however, that mold damage cannot be covered under the HOB–T policy. It contends that a named-perils policy excludes all risks not specifically included in the insurance contract, and because mold is not a named peril in the policy, mold is excluded from coverage. The Insurer's argument ignores the undeniable fact that mold can be damage. We do not share the Insurer's narrow view, but find that "mold may be either damage or a cause of loss, depending on the circumstances."[8] *See Liristis v. Am. Family Mut. Ins. Co.,* 204 Ariz. 140, 61 P.3d 22,

25 (App.2002) (finding homeowner's policy did not exclude mold damage caused by a covered event); *see also Keenan v. Wausau Lloyds Ins. Co.,* No. 04–98–00087–CV, 1998 WL 652332, at *3 (Tex.App.-San Antonio Sept. 23, 1998, no pet.) (not designated for publication) (holding that homeowner's named-perils policy covered cost for accessing defectively constructed plumbing lines after named peril caused damage to homeowner's property); *Kemmerer v. State Farm Ins. Co.'s,* No. 01–5445, 2004 WL 87017, at *2 (E.D.Pa. Jan. 19, 2004) (holding that "[i]f the leak from the powder room caused the mold infestation, that leak would fall within the peril [sudden and accidental discharge or overflow of water] outlined in the homeowner's insurance policy."); *Prudential Prop. & Cas. Ins. Co. v. Lillard–Roberts,* No. CV–01–1362–ST, 2002 WL 31495830, at *9–10 (D.Or. June 18, 2002) (finding that, in a named-perils policy, the "accidental discharge or overflow of water" peril provided for coverage of physical mold damage caused by a water leak).

If a named peril—the accidental discharge, leakage, or overflow of water from within an air conditioning system—caused the alleged mold, the damage could be a

---

8. Citing *Columbiaknit, Inc. v. Affiliated FM Ins. Co.,* No. 98–434–HU, 1999 WL 619100 (D.Or. Aug. 4, 1999), the Insurer argues that mold cannot be both a loss and a cause of a loss because the terms "peril" and "physical loss" have been defined differently. In *Columbiaknit,* the court defined "perils" as "active forces which cause the loss of or damage to the insured property." 1999 WL 619100, at *3. It held that the "requirement that the loss be 'physical' ... is widely held to exclude losses that are intangible ... [and precludes] any claim ... when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *Id.,* at *4. However, nothing in the court's ruling suggests that mold cannot at times operate as a peril and at other times as a physical loss. The court

found merely that the clothing in the manufacturer's inventory would not be considered a loss unless it was physically damaged by the mold—meaning that the claimant must first prove demonstrable damage from the mold before it could recover. *Id.,* at *7 ("Goods need not have been water-soaked from the water intrusion to be covered. Fabric and garments in the [facility] that are moldy as a result ... of the water leak are covered property.... Furthermore, fabrics and garments with a pervasive, persistent or noxious odor may also be physically damaged property.... Likewise, if the plaintiff establishes at trial a class of garments which has increased microbial counts and that will, as a result, develop either an odor or mold or mildew, these items may be covered as well.").

physical loss covered under the HOB–T policy because this type of damage was not specifically excluded from coverage in the policy. Accordingly, we sustain the Policyholder's first issue to the extent that it asserts that the trial court erred in granting the Insurer's motion for summary judgment as to the breach-of-contract claim. We reverse the part of the trial court's judgment that granted summary judgment in favor of the Insurer as to the breach-of-contract claim, and we remand to the trial court for further proceedings consistent with this opinion.

## VI. The Extracontractual Claims

In her third issue, the Policyholder asserts that the Policyholder is entitled to have her extracontractual claims considered by a jury because the issue of whether an insurer is liable for denying a claim after its liability has become reasonably clear is a question of fact rather than law.[9] In analyzing the Policyholder's third issue, we address the following: (1) whether, under all circumstances, her extracontractual claims stand or fall along with her breach-of-contract claim; and (2) whether the Policyholder has negated the Insurer's third ground for summary judgment regarding her deposition testimony and her extracontractual claims.

### A. Do the Policyholder's extracontractual claims always stand or fall along with her breach-of-contract claim?

■ The Policyholder asserts that her breach-of-contract claim and extracontractual claims must stand or fall together and

that this court's reversal of the trial court's summary judgment in favor of the Insurer as to the contract claim necessarily requires a reversal of the trial court's dismissal of the extracontractual claims. The Policyholder cites no cases that stand for this proposition.

First, it is important to recognize that this court has not determined that the alleged physical damage to the Policyholder's personal property is covered by the insurance policy in question. Rather, we have held that the trial court erred in granting summary judgment as to the breach-of-contract claim based on the grounds asserted in the Insurer's motion for summary judgment. On remand, the Policyholder still must prove physical loss, not specifically excluded, to her personal property caused by a named peril in her policy. For example, if the Policyholder can prove that her alleged mold damage constitutes a physical loss to her personal property caused by an accidental discharge, leakage, or overflow of water or steam from within a plumbing, heating, or air conditioning system or household appliance, then the Policyholder may be able to recover on her breach-of-contract claim. However, our ruling in this appeal has nothing to do with evidence, if any, that exists to prove the Policyholder's breach-of-contract claim.

Second, there is a significant distinction between an insurer's potential liability to pay an insured as to claims allegedly covered by its insurance policy and the insurer's potential liability for extracontractual claims such as a claim for bad faith. *See*

9. As stated above, the Policyholder conditions her third issue on this court having construed the policy language to provide coverage for the Policyholder's claimed loss. Even though this court has not determined whether the HOB–T policy covers the Policyholder's alleged loss, we interpret the condition on the third issue to fairly include this court's reversal of the trial court's summary judgment as to the Policyholder's breach-of-contract claim. Because we have reversed this part of the trial court's summary judgment, we address the Policyholder's third issue.

*Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 17–18 (Tex.1994). Simply reversing a trial court's summary judgment as to a coverage claim does not necessarily mean that the trial court's summary judgment as to the extracontractual claims must be reversed. *See, e.g., Emmert v. Progressive County Mut. Ins. Co.,* 882 S.W.2d 32, 35–36 (Tex.App.-Tyler 1994, writ denied) (reversing trial court's summary judgment in favor of insurer as to coverage issue, affirming summary judgment as to extracontractual claims, and rejecting insured's argument that a reversal of summary judgment as to coverage, by itself, raises a material fact issue requiring a reversal of summary judgment as to extracontractual claims). Therefore, we reject the Policyholder's argument that this court's reversal of the trial court's summary judgment as to the breach-of-contract claim creates a fact issue and requires reversal as to her extracontractual claims.

### B. Has the Policyholder negated the Insurer's third ground for summary judgment regarding her deposition testimony and her extracontractual claims?

Additionally, one of the grounds that the Insurer asserted in its motion for summary judgment is that the Policyholder's deposition testimony shows that her extracontractual claims fail as a matter of law. In her deposition, the Policyholder testified that the Insurer committed the following alleged wrongs:

(1) The Insurer did not test her belongings so that the Policyholder would know how contaminated they are.

(2) The Insurer did not offer to remediate her belongings.

(3) The Insurer continually denied her insurance claim.

On two occasions during her deposition, the Policyholder was asked if there was anything the Insurer had done wrong, other than refusing to test the Policyholder's apartment and belongings for mold and refusing to pay for items that the Policyholder felt were damaged by mold. On both occasions, the Policyholder's only addition to this list of alleged wrongs was that the Insurer also continually denied her insurance claim. The Insurer asserted in its motion for summary judgment that this testimony shows that the Policyholder's extracontractual claims fail as a matter of law.

On appeal, the Policyholder has not negated this ground for summary judgment. Therefore, on this basis alone, we can affirm the trial court's summary judgment as to the extracontractual claims. *See Lewis v. Adams,* 979 S.W.2d 831, 833 (Tex.App.-Houston [14 Dist.] 1998, no pet.) (holding that summary judgment must be affirmed if there were multiple grounds for summary judgment and the appellant does not attack all grounds on appeal). Furthermore, the Policyholder attached no evidence to her response in opposition to the Insurer's motion for summary judgment.[10] The Policyholder's response contains only the following arguments as to the extracontractual claims: (1) if the trial court grants plaintiff's motion for partial summary judgment, then the Insurer's position in this litigation was merely pretextual, and (2) the Insurer's argument that mold is not a covered peril

---

**10.** In the coverage portion of her summary-judgment response, the Policyholder did incorporate by reference into the response the "argument and authority cited in Plaintiff's motion [for partial summary judgment]." However, this argument and authority does not relate to the extracontractual claims. Further, at no place in this argument and authority or in the Policyholder's response does she incorporate by reference the evidence attached to her motion for partial summary judgment.

is intellectually dishonest because the Policyholder has pleaded that mold was the damage that was caused by the covered peril.[11] Even if the Policyholder had negated this summary-judgment ground on appeal, we still would conclude that the Policyholder's deposition shows that her extracontractual claims fail as a matter of law. *See United States Fire Ins. Co. v. Williams,* 955 S.W.2d 267, 268–69 (Tex. 1997).

For the above reasons, we conclude the trial court properly granted summary judgment as to the Policyholder's extracontractual claims. Accordingly, we overrule the Policyholder's third issue.

## VII. CONCLUSION

The trial court erred in granting summary judgment as to the Policyholder's breach-of-contract claim insofar as its ruling was based on the Policyholder's failure to present an itemized list of damaged property and based on the alleged absence of coverage as a matter of law for mold damage to the Policyholder's personal property. The Policyholder's extracontractual claims do not necessarily stand or fall along with her breach-of-contract claim. Further, the Policyholder has not negated the Insurer's third ground for summary judgment regarding her deposition testimony and her extracontractual claims. Accordingly, the trial court properly granted summary judgment as to those claims. We reverse the trial court's judgment to the extent it dismissed the Policyholder's breach-of-contract claim, and we sever and remand that claim for further proceedings consistent with this opinion.

---

11. The Policyholder's response in opposition as to the extracontractual claims reads in its entirety as follows:

[Insurer's] argument that there is no evidence of extracontractual causes of action because of the "bona fide dispute" rule is misplaced. If the Court were to grant [Policyholder's] motion for summary judgment which prior existing law regarding ensuing damage would dictate, then [Insurer's] position throughout this litigation was merely pretextual in order to avoid paying this claim. Its argument that "mold is not a covered peril" is an intellectually dishonest [sic] in light of [Policyholder's] pleading that mold was the damage that was caused by the covered peril.