Affirmed and Memorandum Opinion filed February 22, 2007









Affirmed and Memorandum Opinion filed February 22, 2007.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00825-CV

____________

 

ANN KELLY AND JAMES E. KELLY, Appellants

 

V.

 

TRAVELERS LLOYDS OF TEXAS INSURANCE
COMPANY,
Appellee

 





 

On Appeal from the 190th
District Court

Harris County, Texas

Trial Court Cause No. 03-61055

 





 

M E M O R A N D U M  O P I N I O N

This is an appeal from a no-evidence summary judgment in
favor of an insurer on the insureds= claim for mold damage
under their homeowners= policy.  We must decide if the
evidence raises a fact issue as to whether the alleged personal-property loss
was caused by a covered peril.  Concluding that it does not and that the
trial court did not err in granting the insurer=s motion for
summary judgment, we affirm.  

 

I.  Factual and Procedural
Background

Appellants/plaintiffs Ann Kelly and James E. Kelly owned a
home in Houston that had been under about six feet of water from a 1994
flood.  In May 2000, the Kellys purchased a homeowners= insurance policy
from appellant/defendant Travelers Lloyds of Texas Insurance Company covering
this residence. 

In November 2001, the Kellys called Travelers to report
what they believed to be a covered claim based on water damage and mold in
their home.  After failing to receive a response, the Kellys placed
another call to Travelers the following month, to ascertain the status of the
claim and to request an investigator to inspect the damage.  During this
phone call, the Kellys informed Travelers that they had agreed to sell their
home to the Federal Emergency Management Administration (FEMA), and the house
would be demolished. The Kellys explained that, in the meantime, they had
rented three storage units and, in November 2001, had moved their personal
belongings into these units.  They also stored some of their possessions
in their son=s garage.  Travelers advised the Kellys to have a
private mold inspector, Nova, come to their home and test for mold.  

The Kellys arranged for the inspection and on December 20,
2001, Patrick O=Brien with Nova tested the Kellys home for
mold and water damage.  By the time he arrived, the Kellys= house had been
completely gutted. In
anticipation of the FEMA demolition, the Kellys had removed baseboards, molding,
appliances, and fixtures, and had knocked several large holes in the
walls.  In O=Brien=s opinion, the house was completely
unlivable.  O=Brien tested several areas of the gutted
house, but he did not visit the storage facilities or inspect the Kellys= personal
property.  Relying on O=Brien=s testing results,
Dr. Paul Pearce of Nova wrote a report indicating elevated mold levels in some
parts of the Kellys= residence.  The following day, on
December 21, 2001, the Kellys closed on the sale of their home to FEMA. 

 

Travelers initially denied the Kellys= claim under the
mistaken belief that the Kellys had cancelled their homeowners= insurance
policy.  However, Travelers realized its error and notified the Kellys on
January 5, 2002, that Travelers had received their claim for mold and water
damage and had corrected the confusion regarding the policy.  Travelers
assured the Kellys that it intended to investigate their claim.  Shortly
thereafter, on January 15, 2002, a Travelers adjuster, Tom Underwood, inspected
the home, as well as the Kellys= personal property which was then located
in the four separate non-climate-controlled storage facilities.[1]  The
following week Travelers sent a letter to the Kellys officially denying the
claim on the basis that there was Ano indication of
direct physical damage caused by a covered peril.@  

The Kellys filed suit against Travelers, alleging Travelers
had breached the insurance contract by failing to pay their claim. 
Travelers filed a no-evidence motion for summary judgment contending there was
no evidence that the alleged damage to their personal property was caused by a
covered peril under the Kellys= homeowners= policy. 
After a hearing, the trial court granted Travelers=s motion for
summary judgment.  A week after granting summary judgment, the trial court
signed another order excluding from the summaryBjudgment evidence
the affidavit of the Kellys= designated expert, Dr. Paul Pearce. 

The Kellys now challenge the trial court=s rulings and
present the following issues for our review: 

(1)     The trial court erred in
granting Travelers=s objections to the Kellys= controverting summary-judgment
evidence, specifically the Pearce affidavit.[2]

(2)     The Kellys presented
sufficient causation evidence to allow the trier of fact to segregate covered
losses from non-covered losses and determine that a covered loss caused damage
to their personal property.

 

(3)     The Kellys presented
sufficient summary-judgment evidence to create a genuine issue of material
fact, that their mold claim presented a covered loss under their insurance
policy.[3]

(4)    
The Kellys presented sufficient summary-judgment evidence creating a genuine
issue of material fact that the Kellys= personal property
is not subject to the automatic removal provision under the insurance policy. 

                                                   
II.  Analysis 

In reviewing a no‑evidence summary judgment, we
ascertain whether the nonmovant pointed out summary‑judgment evidence of
probative force to raise a genuine issue of fact as to the essential elements
attacked in the no‑evidence motion.  Johnson v. Brewer &
Pritchard, P.C., 73 S.W.3d 193, 206B08 (Tex. 2002).  We take as true all evidence favorable to the nonmovant, and we make all
reasonable inferences therefrom in the nonmovant=s favor.  Dolcefino
v. Randolph, 19 S.W.3d 906, 916 (Tex. App.CHouston [14th
Dist.] 2000, pet. denied).  A no‑evidence motion for summary
judgment must be granted if the party opposing the motion does not respond with
competent summary‑judgment evidence that raises a genuine issue of
material fact.  Id. at 917. When, as in this case, the order
granting summary judgment does not specify the grounds upon which the trial
court relied, we must affirm summary judgment if any of the independent
summary-judgment grounds is meritorious.  FM Props.  Operating Co.
v. City of Austin, 22 S.W.3d 868, 872 (Tex.  2000). 

 

In its no-evidence motion for summary judgment, Travelers
stated no evidence showed that (1) a covered loss caused the alleged damage to
the Kellys= personal property or (2) the Kellys= personal property
was damaged by a covered peril before they moved it to the
non-climate-controlled storage facilities.[4]  In their second
and third issues, the Kellys argue they provided sufficient causation evidence
to allow the trier of fact to segregate covered losses from non-covered losses,
as well as to create a genuine issue of material fact on the issue of whether a
covered loss caused damage to the their personal property.  

Under their homeowners= policy, the
Kellys= claim for personal
property damage under Coverage B required proof of Aphysical loss@ to their personal
property caused by a named peril.[5] 
The only possible coverage for the Kellys= personal property
claim was under the heading ASection I‑Perils Insured Against,@ and subheading ACoverage B
(Personal Property).@  That subsection states the
following in pertinent part:

We insure against physical loss to the property described in Section I
Property Coverage B (Personal Property) caused by a peril listed below, unless
the loss is specifically excluded . . .

9.  Accidental Discharge, Leakage or Overflow of Water or Steam
from within a plumbing, heating or air conditioning system or household
appliance.

 

 

To defeat a no-evidence motion for summary judgment, the
Kellys had to prove that a named peril, i.e., a plumbing, heating,
air-conditioning, or appliance leak caused mold, the mold then became airborne,
and thereafter contaminated their personal property.  See De Laurentis
v. United Services Auto Ass=n, 162 S.W.3d 714,
722B24 (Tex. App.CHouston [14th
Dist.] 2005, pet. denied) (defining loss and concluding that the plain meaning
of the policy language, covers tangible damage to the policyholder=s personal
property caused by a plumbing leak)[6];
Travelers Indem. Co. v. Jarrett, 369 S.W.2d 653 (Tex. App.CWaco 1963, no
writ) (concluding that a provision insuring against Aloss or damage
caused by lightning@ renders the insurer liable for all known
effects of lightning, Aand includes all loss or damage which
results as a direct and natural consequence of the lightning, notwithstanding
other incidental agencies may be incidental in adding to the loss or damage.@)

An insured is not entitled to recover under an insurance
policy unless she proves her damages are covered by the policy. Employers
Cas. Co. v. Block, 744 S.W.2d 940, 944 (Tex. 1988), overruled in part on
other grounds by State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696 (Tex. 1996); Wallis v. United Servs. Auto. Ass'n, 2 S.W.3d 300, 303 (Tex. App.CSan Antonio 1999,
pet. denied).  Under the doctrine of concurrent causes, when covered and
non‑covered perils combine to create a loss, the insured is entitled to
recover that portion of the damage caused solely by the covered peril.  Allison
v. Fire Ins. Exchange, 98 S.W.3d 227, 258 (Tex. App.CAustin 2002, pet.
granted, judgm=t vacated w.r.m.); State Farm Fire & Cas. Co.
v. Rodriguez, 88 S.W.3d 313, 320B21 (Tex. App.CSan Antonio 2002,
pet. denied).

The doctrine of concurrent causation is not an affirmative
defense or an avoidance issue; instead, it is a rule embodying the basic
principle that insureds are not entitled to recover under their insurance
policies unless they prove the damage is covered by the policy.  Allison,
98 S.W.3d at 258.  The insured must present some evidence upon which
the jury can allocate the damages attributable to the covered peril.  Id.  at 258‑59.  Because the insured can recover only for covered
events, the burden of segregating the damage attributable solely to the covered
event is a coverage issue for which the insured carries the burden of
proof.  Rodriguez, 88 S.W.3d at 321.  Failure to segregate
covered and noncovered perils is fatal to recovery.  Allison, 98
S.W.3d at 259.  A[A]lthough a plaintiff is not required to
establish the amount of his damages with mathematical precision, there must be
some reasonable basis upon which the jury=s finding rests.@  Rodriguez,
88 S.W.3d at 320. 

 

Travelers contends the mold on the Kellys= personal property
resulted from a combination of factors.  According to Travelers, the
Kellys failed to meet their burden under the doctrine of concurrent
causes.  To establish causation, the Kellys were required to prove (1) a
named peril, for example, a plumbing leak, caused mold in their home, (2) that
mold became airborne before the house was gutted and their personal property
moved to storage, and (3) this same mold from the covered peril contaminated the
personal property before it was moved to storage.  In their response to
Travelers=s no-evidence motion for summary judgment, the Kellys
proffered the following evidence: 

(1)     The affidavit, report, and
deposition testimony of Dr. Paul PearceCtheir designated causation expert.

(2)     The deposition testimony
of Patrick O=BrienCthe technician for Dr. Pearce=s mold testing company, Nova.

(3)     Portions of Travelers=s adjuster Tom Underwood=s report and deposition testimony.

(4)     Portions of Travelers=s designated expert John Solook=s report and deposition testimony.


We
address, in turn, each piece of evidence the Kellys produced to defeat
Travelers=s no-evidence motion for summary judgment. 

1.      
Dr. Pearce=s Testimony and Affidavit 

The Kellys rely heavily on their causation expert, Dr.
Pearce.  They allege that through his affidavit testimony Dr. Pearce
produced the following causation evidence, which they claim satisfies the
doctrine of concurrent causes: (1) plumbing leaks existed in the Kellys= home, (2) these
plumbing leaks caused mold, (3) Dr. Pearce can differentiate between mold from
covered and non-covered claims, and (4) most, if not all of the mold found in
the Kellys= home was due to plumbing leaks. 

 

Even if we could properly consider Dr. Pearce=s affidavit, it
would not raise a genuine issue of material of fact on the issue of
causation.  Dr. Pearce never inspected the personal property that was in
storage at the time the inspector (Patrick O=Brien) did the
testing at the Kellys= home.  After reviewing only
photographs of the personal property and O=Brien=s report, Dr.
Pearce concluded (as stated in his affidavit) that the visible water damage
found in the Kellys= home is consistent with water leaks from
the roof, water leaks from the windows, and/or plumbing leaks.  He
confirmed this finding in his deposition, testifying that much of the mold
resulted from a roof, window, or plumbing leak. 

Dr. Pearce=s report indicated elevated mold levels in
some parts of the Kellys= residence.  However, Dr. Pearce did
not elaborate on how this mold might have caused the damage to personal
property that had been stored in non-climate-controlled space for six months
before any mold testing.  Dr. Pearce admitted that Nova=s testing did not
reflect what the conditions would have been in the Kellys= home before they
completely gutted it.  When the home was testedCprior to the FEMA
closingCthe Kellys had
moved all of their personal property to three non-climate-controlled storage
facilities, and to their son=s garage.  Immediately thereafter,
the Kellys knocked holes in the walls, and completely stripped the house of any
useful materials.  Dr. Pearce could not affirmatively state whether excess
air-borne mold grew in the Kellys= residence before
the Kellys removed the baseboards, wall boards, and other parts of the house.

Dr. Pearce thought it a reasonable probability that the
mold contaminating the Kellys= personal property resulted from Aspecific plumbing
and/or roof leaks prior to its removal from the home and subsequent storage.@  Roof leaks
and window leaks are not covered under the Kellys= policy. 
But, Dr. Pearce did not allocate the Kellys= loss, if any,
between any alleged plumbing leaks (covered peril), and the roof and window
leaks (non-covered perils).  He only concluded that one might be able to
distinguish between mold caused by the 1994 flood waters or another type of
water intrusion.  This conclusion still left three possible sources of
moldCplumbing leaks,
roof leaks, and window leaks.  

 

Dr. Pearce has not identified any plumbing leak in the
house and thus no specific plumbing leak in the master bedroom or master
bathroom that caused contamination of the stored personal property.  Dr.
Pearce also admitted in his deposition that, because the Kellys= personal property
had been placed in non-climate-controlled storage, it could have developed mold
in as quickly as a week after being placed there.  

When an expert does not rule out causes of loss other than
the one he assigns, that Arenders his opinion a little more than
speculation and therefore, unreliable.@  Emmett
Prop., Inc. v.  Halliburton Energy Serv., Inc., 167 S.W.3d 365, 373
(Tex. App.CHouston [14th Dist.] 2005, no pet.).  Because the
Kellys= expert failed to
indicate the extent to which the covered peril damaged their home, we cannot
conclude that a certain percentage of the damage was caused by the plumbing
leaksCthe covered
perils.  Allison, 98 S.W.3d at 304.  This failure to allocate
and identify the portion covered is Afatal to their
claim.@  Id.  We
conclude that Dr. Pearce=s affidavit and deposition testimony does
not raise a genuine issue of material fact on the issue of causation.  

2.      
Patrick O=Brien=s Testimony

When Patrick O=Brien tested the
Kellys= home for mold and
water damage, the house had been totally gutted, and, in his opinion, was
completely unlivable.  O=Brien did not visit any of the storage
facilities or inspect any of the personal property.  O=Brien, who, unlike
Dr. Pearce, actually inspected the Kellys= residence, could
not determine whether the mold damage had developed within the weeks prior to
his visit (in mid-December 2001) or  some earlier time.  He could not
tell whether the water intrusion in the master bathroom resulted from a
plumbing leak or was caused by a previous flood.  Nor could he tell
whether the water damage was caused by a leak in the windows or a leak in the
roof above the window.  We conclude O=Brien=s testimony does
not raise a material issue of fact on causation. 

3.       Tom Underwood=s Testimony

 

On January 15, 2002, Tom Underwood of Travelers, inspected
the Kellys= residence as well as their stored personal
property.  Of those who offered testimony or opinions on causation, he is
the only individual who actually inspected the personal property while it was
in storage.  In his report of the residence, Underwood noted that the
upstairs bath and master bath had some visible mold growth due to plumbing
leaks.  He produced a field inspection report and thirty-two photographs
of the residence and personal property.  We conclude that, although he
noted visible mold growth in the home due to plumbing leaks, Underwood did not
link the mold growth on the personal property to the mold in the home.  Indeed,
when he inspected the personal property in January of 2002, Underwood stated
that he found no visible mold growth on the property.  His detection of
mold in the house does not necessarily mean that the Kellys= personal property
was contaminated by mold from plumbing leaks before being put in
non-climate-controlled storage for nearly six months.  Therefore,
Underwood=s testimony also is no evidence of causation. 

4.      
John Solook=s Testimony

John Solook, the Certified Industrial Hygienist (CIH) hired
by Travelers testified that he understood the thirty-two photographs depicted
the house as it looked when Tom Underwood inspected it on January 15,
2002.  At first, Solook assumed, as Underwood had stated, that there was a
plumbing leak in the upstairs bathroom and master bathroom.  However,
during his deposition, after he had viewed color photographs of the bathrooms,
he recanted his initial position and testified the water damage along the sides
of the master bathroom tub was not due to a leak, but to a failure of grout or
caulking, or even of the plate that goes behind the faucet in a sink or shower
to prevent water from migrating down behind the wall.  He also testified
that the photographs indicated long-term overflow or dripping of water from the
sink, as opposed to a plumbing leak.  A lack of caulking along the door to
the master bathroom shower also would explain some of the water damage. 
Dr. Pearce agreed that the lack of caulking alongside the shower doors could
have led to water damage to the baseboards and did not necessarily indicate a
plumbing leak.  

Noting that it is difficult to tell whether the personal
property was contaminated prior to being placed in storage, Solook raised the
following points in his report: 

!       AThe majority of cabinetry,
appliances, bathroom, fixtures, A/C registers, HVAC unit, insulation, furniture
and other items were removed and placed in what appeared [to be] non-climate
controlled (environment) storage with probable inadequate ventilation.@

 

!       AA non-climate controlled storage
facility will have an environment favorable for supporting microbial growth and
amplification.@

!       AThe method of removal is not known
but if standard industry practices, such as wiping down, HEPA vacuuming were
not used especially those items from the bathrooms and upstairs room, there is
potential to contaminate the storage locations with mold spores.@ 

!       AIn addition, if the
carpeting/padding from areas other than the master bedroom/bath/upstairs bath
and adjacent areas were not adequately cleaned using standard industry
practices this would also be a source of mold spores while in storage . . .@

!       ARemoval of known contaminated items
without control methods, such as air filtration units (negative air movers) and
isolation would disturb the mold contamination and would be distributed
throughout the immediate area and potentially to other areas within the
residence.@

!       AStorage of cleaned and/or non-contaminated
contents in non-climate controlled locations will allow conditions to develop
within a short period of time, possibl[y] 30 days or less, favorable for mold
growth especially in this geographical area.@

(emphasis
added).  Even if we considered only Solook=s recanted
position, Solook=s testimony still fails to establish any
causal link between the property in storage and any leak in the master bathroom
and upstairs bathroom.  Solook=s testimony is no
evidence of causation.          


III.  Conclusion

The Kellys produced no evidence of causation to link any
alleged mold caused by plumbing leaks to the mold on their personal property
held in storage.  Even if mold was caused by a plumbing leak, the Kellys
had to show that the damage to the unexamined, stored personal property was
caused by the mold that resulted from a plumbing leak.  The Kellys have
not identified any specific plumbing leak that existed before the house was
completely gutted and the plumbing fixtures removed.  Moreover, the Kellys
have not identified any mold caused by a specific plumbing leak existing in
their home before this key event. 

 

The Kellys admitted they suffered water damage in their
home from roof leaks and window leaks, which events they also claim resulted in
mold.  The Kellys, however, did not offer the requisite proof to establish
that the contamination of their personal property (if caused by any water
damage in the home) was not related to the mold caused by these non-covered
water events.  The Kellys did not offer any evidence from their expert
showing that their personal property was tested to determine if any mold
contamination had occurred or the type or source of mold, if any.  The
storage units were not tested to see what types of mold, if any, were present
in the units before the Kellys placed their belongings in storage.  Mr.
Kelly testified that when they went to remove the contents from the storage
facilities (after six to seven months in a non-climate-controlled environment),
it was Aeaten up with
mold.@  However,
there is no evidence that mold due to a plumbing leak caused contamination to
the personal property.  The items placed in storage were apparently fine
when initially stored and showed signs of mold only after being in
non-climate-controlled units for several months.  Because the Kellys had
burned or otherwise disposed of the contents of the storage facilities, it was
no longer possible to test these items.

Although the summary judgment evidence showed the Kellys= home may have had
mold contamination, it did not show that their personal property was
contaminated by mold due to a covered peril, i.e., a plumbing leak. 
Because an insured can recover only for covered events, the burden of
segregating the damage attributable solely to the covered event is a coverage
issue the insured must prove.  Telepak v. United Services Auto. Assoc.,
887 S.W.2d 506, 507B08 (Tex. App.CSan Antonio 1994,
writ denied) (determining that insured carries burden to establish exception to
exclusion because exception to exclusion creates coverage).  Moreover, it
follows that an insured=s failure to carry the burden on
segregation is material and fatal.  Wallis, 2 S.W.3d at 302.  

 

The Kellys= failure to segregate mold damage
resulting from covered and noncovered perils is fatal to their recovery.  See
Allison, 98 S.W.3d at 259; see also Texarkana Memorial Hosp. v. Murdock,
946 S.W.2d 836, 840 (Tex. 1997) (relying upon principle of concurrent causation
doctrine in determining that plaintiff's award for medical expenses could not
stand in light of failure to properly segregate expenses); Wallis, 2
S.W.3d at 302‑03 (affirming judgment notwithstanding the verdict on the
basis that the insured had no evidence that established the amount of damage
from the plumbing leak).  Accordingly, we overrule the Kellys= second and third
issues.  

We affirm the trial court=s summary judgment
in favor of Travelers.[7]

                                                             


 

 

/s/     
Kem Thompson Frost

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed February 22, 2007.

Panel consists of
Justices Fowler, Edelman, and Frost.

 

 














[1]   Tom Underwood was the only inspector to
actually inspect the personal property the Kellys had moved and placed in the
storage facilities. 





[2]  In our analysis, we fully consider the Pearce
affidavit.  Therefore, we need not address the first issue as to whether
the trial court erred in granting Travelers=s
objection to the Pearce affidavit.





[3]  Because of their similarity, issues two and
three are addressed together in this opinion. 





[4]  In their post-submission letter brief of
September 7, 2006, Travelers relies on the recent Texas Supreme Court case of Fiess
v. State Farm Lloyds, 202 S.W.3d 744, 747B50 (Tex. 2006), and asserts that this case negates mold coverage and,
therefore, summary-judgment on the Kellys=
mold claim was proper.  Although we acknowledge this opinion, the facts in
this case do not require us to determine whether the Fiess opinion bars
the Kellys= mold claim.  Fiess notwithstanding, the
Kellys failed to produce sufficient causation evidence to defeat a no-evidence
motion for summary judgment.  





[5]  The Kellys distinguish between Aphysical loss@ as
opposed to a Adirect physical loss,@ contending that Adirect physical loss@ is the standard Travelers used when it initially denied the Kellys= claim.  The Kellys state that this standard is
the incorrect standard.  Regardless of the standard used when Travelers
denied the Kellys= claim, the Kellys=
claim requires proof of Aphysical loss@ to
their personal property by a covered peril.  In this opinion, we do not
address whether Travelers denied the claim under the incorrect legal standard,
but discuss only whether the Kellys produced sufficient causation evidence to create
a genuine issue of material fact on whether a covered loss caused damage to
their personal property. 





[6]  In De Laurentis, the insured brought an
action against the homeowner=s insurer,
alleging breach of a renter=s insurance
policy and various extra-contractual claims including bad faith handling of
claim for mold damage to personal property allegedly caused by a leaking air
conditioner. 162 S.W.3d at 722.  The homeowner=s insurer moved for and obtained summary judgment on
the ground that mold was not a named peril. Id.  Unlike this case,
the homeowner=s insurer did not attack the plaintiff=s claim on a causation basis. Id. at 723,
n.7.  This court stated that mold can constitute property damage and,
therefore, remanded the case to the trial court because there was an issue as
to whether a named peril had caused mold, which, in turn, caused damage to the
plaintiff=s personal property.  Id. at 724B25. 





[7]  Because
we affirm the summary judgment based on the causation ground, we need not
address issue four regarding Travelers=s argument that the Kellys= claim lapsed thirty days from the date they 
began removing their personal property from the house under the Aautomatic removal@ provision in the policy.