Barbara BURNS, Appellant,

v.

**BAYLOR HEALTH CARE SYSTEM, Appellee.**

No. 08–02–00159–CV.

Court of Appeals of Texas, El Paso.

Sept. 19, 2003.

Elizabeth Allison Florence, Dallas, for appellant

Joann N. Wilkins, Burford & Ryburn, Dallas, for appellee.

Before Panel No. 5 McCLURE, J., CHEW, J., and HILL, C.J. (Ret.).

## OPINION

DAVID WELLINGTON CHEW, Justice.

Barbara Burns appeals a motion to strike expert testimony and the summary judgment granted in favor of Appellee Baylor Health Care System ("Baylor") in a premises liability action. Ms. Burns raises two issues on appeal: (1) the trial court abused its discretion by striking the expert witness's testimony; and (2) the trial court erred in granting summary judgment in favor of Appellee Baylor Heath Care System because there was a material issue of fact in this case. We reverse the trial court's judgment and remand this cause to the trial court for further proceedings.

## FACTUAL SUMMARY

On October 6, 1999, Ms. Burns and her daughter traveled to the Baylor University Medical Center Campus for a doctor's appointment and parked in one of the facility's underground parking lots. After the appointment, Ms. Burns and her daughter took an elevator back to the parking garage. Ms. Burns and her daughter exited the elevator and proceeded to walk towards the direction in which they had parked their car. Ms. Burns took a few steps and then fell from the curb in front of the elevators. Ms. Burns asserts that she fell because the parking garage floor and curb in front of the elevators were painted in such a manner as to create the illusion that there was no curb. Deposition photographic exhibits and testimony show that the curb top was painted yellow and the parking garage floor had a section of diagonal yellow stripes marking the area in front of the elevators.

In the trial court, Appellee Baylor moved for summary judgment under Texas Rules of Civil Procedure 166a(c) and 166a(i) on two elements of premises liability: whether the curb was a condition posing an unreasonable risk of harm and whether Baylor had no actual or constructive knowledge of the premises defect, if any, of which Ms. Burns complained. Ms. Burns timely filed a response to Baylor's motion and provided summary judgment evidence that included the affidavit and curriculum vitae of Jack Madeley, a safety engineering expert. Baylor filed a reply brief and a motion to strike the testimony of Ms. Burn's expert witness. The trial court granted Baylor's motion and granted summary judgment in favor of Baylor. The trial court denied Ms. Burns' motion

for reconsideration. Ms. Burns now brings this appeal.

## DISCUSSION

### Motion to Strike Expert Testimony

In her first issue, Ms. Burns contends that the trial court abused its discretion in its decision to exclude the testimony of her expert witness, Jack Madeley. Baylor objected to Mr. Madeley's affidavit testimony on grounds that Mr. Madeley was not qualified to be an expert and that his opinions did not meet the requirements for expert testimony. *See* Tex.R.Evid. 702.

█ We review a trial court's exclusion of expert testimony for an abuse of discretion. *See Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 718–19 (Tex.1998); *Broders v. Heise,* 924 S.W.2d 148, 151 (Tex.1996). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *E.I. du Pont de Nemours & Co. v. C.R. Robinson,* 923 S.W.2d 549, 558 (Tex.1995). A reviewing court cannot conclude that a trial court abused its discretion if, in the same circumstances, it would have ruled differently or if the trial court committed a mere error in judgment. *Id.* Because the trial court did not specify on which ground it excluded Mr. Madeley's testimony, we will affirm the trial court's ruling if any ground is meritorious. *See K–Mart Corp. v. Honeycutt,* 24 S.W.3d 357, 360 (Tex.2000).

### Expert Witness Qualifications

█ Texas Rule of Evidence 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Rule 702 contains three require-

ments for admission of expert testimony: (1) the witness must be qualified; (2) the proposed testimony must be scientific, technical, or specialized knowledge; and (3) the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Tex.R.Evid. 702; *Robinson,* 923 S.W.2d at 556. The party offering the expert's testimony bears the burden to prove that the witness is qualified under Rule 702. *See Gammill,* 972 S.W.2d at 718; *Broders,* 924 S.W.2d at 151. The role of the trial court in qualifying experts is to ensure "that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Broders,* 924 S.W.2d at 152. The offering party must demonstrate that the expert witness possesses special knowledge as to the very matter on which he proposes to give an opinion. *Gammill,* 972 S.W.2d at 718. In addition, the requirements of reliability and relevance apply to all expert testimony offered under Rule 702. *See Gammill,* 972 S.W.2d at 725.

Ms. Burns argues that the trial court abused its discretion in excluding Mr. Madeley's affidavit because he has specialized knowledge in the principles of safety engineering and the rules of hazard control, and he has built his entire career on assessing risks to people and attempting to engineer solutions to lessen those risks. In its motion to strike Mr. Madeley's affidavit testimony, Baylor argued that while Mr. Madeley had experience with safety issues, he did not have specialized knowledge related to building construction and design.

Ms. Burns had the burden to show that Jack Madeley was qualified to be an expert based on his knowledge, skill, experience, training, or education on the specific issues in this case. *See Broders,* 924 S.W.2d at 153–54. The evidence before

the trial court showed that Mr. Madeley is the owner and principal consultant of Madeley Safety Engineering Consultants. Mr. Madeley holds a bachelor's degree in Industrial Engineering and a master's degree in Safety Engineering from Texas A & M University. Mr. Madeley is a board certified safety professional and a member of the American Society of Safety Engineers, the System Safety Society, and the National Safety Council. From 1990 to 1997, Mr. Madeley worked as a consultant for Nelson & Associates, advising in the following areas: accident cause analysis; industrial and consumer product safety engineering; industrial and consumer product accident reconstruction; construction safety; fire protection engineering; industrial (workplace) and product safety management; industrial and product safety program development and evaluation; premises safety (stairs, ramps, level surfaces); offshore and land-based oilfield safety; human factors engineering analysis of workplace, premises, and equipment (product) systems; risk assessment; and system safety analysis. From 1975 to 1989, Mr. Madeley worked as a Safety Engineer and Construction Engineer for Marathon Oil Company and provided services which included personnel safety, accident rate reduction, and safety system design review at both onshore and offshore facilities.

Mr. Madeley has an extensive background in the field of safety engineering and is board certified as a safety professional. Further, Mr. Madeley's qualifications included specialized knowledge in premises safety and accident cause analysis. Therefore, we conclude that Ms. Burns carried her burden to provide proof of Mr. Madeley's expert qualifications and specialized knowledge on the issues relevant to her claim.

### Expert Testimony That Will Assist the Trier of Fact

■ Even if Mr. Madeley's credentials and experience were not determinative, it was also within the discretion of the trial court to exclude his testimony if it was within the common knowledge of the trier of fact. Possession of knowledge and skill not held by people generally does not in and of itself mean that such expertise will assist the trier of fact. *See Broders,* 924 S.W.2d at 153; *Honeycutt,* 24 S.W.3d at 360. Expert testimony assists the trier of fact when the expert's knowledge and experience on a relevant issue are beyond that of the average juror and the testimony helps the trier of fact understand the evidence or determine a fact issue. *Honeycutt,* 24 S.W.3d at 360. When the jury is equally competent to form an opinion about the ultimate fact issues or the expert's testimony is within the common knowledge of the jury, the trial court should exclude the expert's testimony. *Id.*

Mr. Madeley's affidavit formed a significant part of the summary judgment evidence Ms. Burns offered in reply to Baylor's summary judgment motion. For the purposes of preparing his affidavit testimony, Mr. Madeley reviewed deposition testimony, color copies of photographs of the curb and parking garage area, striping service invoices, and Baylor's plans for restriping the parking garage. Mr. Madeley also relied on his understanding of literature related to safety engineering, safety management, standard safety analysis techniques, human factors engineering, and visual discrimination and awareness.

In his affidavit, Mr. Madeley provided background information on the accident process which he stated was a concept which recognizes that with reasonable forethought, root causes of any resulting injury can be reasonably anticipated and prevented. Mr. Madeley then provided

general fall type accident statistics and stated that prevention of falls should be a major concern to employers, engineers, architects, builders, and administrators of any building, facility, or surface area. Further, Mr. Madeley described the human vision during the walking process, including the following points: (1) a person's general attention while walking is centered on various ever-changing points; (2) the focusing of one's line of sight takes time for eye movement and focus, significantly limiting the number of specific objects that can be truly seen and understood while walking; (3) vision shifts involving differences in focal distance take additional time; (4) most of what is seen while walking is perceived with peripheral vision and in order to become aware of potential hazards in the walking surface, such hazards must be conspicuous enough, unusual enough, and threatening enough to attract special attention from a distance; and (5) if a walking surface hazard is not specifically focused on and recognized as a hazard from a distance, perception becomes particularly difficult after one approaches within the distance that defines the outer or periphery limits of one's normal line of sight. Mr. Madeley also briefly discussed the core principles of safety engineering and cardinal rules of hazard control, including the following points: hazards are first to be controlled by (1) hazard elimination or inherent safety designed or planned, followed by (2) minimizing necessary hazards through the use of add-on safety devices or features and remaining hazards are to be addressed by (3) the development and publication of safe product, machine, equipment, or facility use methods and practices.

After his outline of general principles, Mr. Madeley then offered ten foundational opinions and nine summary opinions and conclusions. The ten foundational opinions addressed areas of knowledge that Mr. Madeley believed Baylor knew or should have known: (1) its responsibility to exercise reasonable care in establishing and maintaining a premise free of recognized hazards; (2) the basic elements of premises accident prevention programming; (3) the core principles of safety engineering and the cardinal rules of hazard control; (4) safety engineering and safety management techniques to identify, evaluate, and control reasonably foreseeable potential premises safety hazards; (5) the severe injury potential associated with falls, that falls are a leading cause of injury, and that such injury potential would dictate focused attention on elimination or control of related hazardous conditions or factors; (6) safer and reasonable alternative design of the garage facility that would have prevented or significantly reduced the risk of injury; (7) Baylor knew or should have specifically known the safety literature that relates to single steps and visual acquisition of hazards while walking in addition to minimum requirements of specific codes, standards, and regulations; (8) as people increase in age the amount of light needed for visual acquisition and discrimination generally increases; (9) Baylor knew or should have known that a premises containing a hidden fall hazard, if allowed to be used by patrons, only awaits the exposure of a certain number of persons to such hazards before potential injury is certain to occur; and (10) proper accident cause analysis must focus on the "accident process."

On appeal, Ms. Burns asserts that Mr. Madeley's specialized knowledge on the human visual process assists the trier of fact by explaining visual focus while walking and how the way the curb was painted and the parking garage floor may have created the optical illusion of a flat surface. Ms. Burns also contends that Mr. Made-

ley's testimony assists the trier of fact to understand that the curb and parking garage floor should have been painted in a way that would not have created an optical illusion, that it was possible for Baylor to identify, evaluate, and control the hazard before someone fell, and that a stair is a hazard and painting hazards in a certain way can decrease the risk of injury.

Mr. Madeley's affidavit testimony provides depth or precision to the trier of fact's understanding of a relevant issue in this case. "Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." *Honeycutt*, 24 S.W.3d at 360, *quoting Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir.1986). Mr. Madeley possesses specialized knowledge of the human visual process, which is not obviously within the common knowledge of jurors. Therefore, we conclude that Ms. Burns carried her burden to provide proof that Mr. Madeley's opinions would have assisted the trier of fact to understand the evidence or to determine a fact in issue and were beyond the common knowledge of the trier of fact.

### Relevance and Reliability of Expert Witness Testimony

In its motion to strike, Baylor also argued that Mr. Madeley's opinions were not relevant to the issues in the case and it questioned the reliability of Mr. Madeley's research methods. Rule 702 requires that an expert's testimony be relevant and based on a reliable foundation.

*Robinson*, 923 S.W.2d at 556. To be relevant, the proposed testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.,citing United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985). Mr. Madeley's affidavit testimony had a clear relationship to the issues of premises liability and safety disputed in the case. The trial court could not have based its exclusion of Mr. Madeley's testimony on relevancy grounds.

Turning to Baylor's reliability challenge, the trial court was required to "evaluate the methods, analysis, and principles relied upon in reaching the opinion ... [in order to] ensure that the opinion comports with applicable professional standards outside the courtroom and that it 'will have a reliable basis in the knowledge and experience of [the] discipline.'" *Gammill*, 972 S.W.2d at 725–26. "The trial court is not to determine whether an expert's conclusions are correct, but only whether the analysis used to reach them is reliable." *Id.* at 728. In *Robinson*, the Texas Supreme Court identified several factors to consider in determining whether scientific evidence is reliable and thus, admissible under Rule 702.[1] *Robinson*, 923 S.W.2d at 557. However, the Court in *Gammill* recognized that the *Robinson* factors for assessing the reliability of scientific evidence cannot be applied to non-scientific testimony. *See Gammill*, 972 S.W.2d at 726. For such instances, the *Gammill* Court adopted the "analytical gap" analysis for assessing reliability by which the trial court may determine that

---

**1.** The *Robinson* factors include, but are not limited to: (1) the extent to which the theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and/or publication; (4) the technique's poten-

tial rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the non-judicial uses which have been made of the theory or technique. *Robinson*, 923 S.W.2d at 557.

there is too great an analytical gap between the data the expert relies upon and the opinion offered. *Id.* at 727; *Exxon Pipeline Co. v. Zwahr,* 88 S.W.3d 623, 629 (Tex.2002). Such an analytical gap exists if an expert fails to demonstrate how his or her observations support his or her conclusions. *See Gammill,* 972 S.W.2d at 727.

From his affidavit testimony, it is clear that Mr. Madeley's opinions were based on the application of his knowledge and training to the underlying facts in the case, rather than on scientific methods. As a board certified safety engineer, Mr. Madeley reviewed deposition testimony, color photographs of the location of Ms. Burn's fall, particularly the curb and its surroundings, consulted research related to safety engineering, safety management, standard safety analysis techniques, human factors engineering and visual discrimination and awareness, and reviewed Baylor's re-striping plans.

In his affidavit, Mr. Madeley provided significant detail on his knowledge of the accident process and description of the human visual system while walking. Mr. Madeley also discussed the core principles of safety engineering and hazard control. Based on this methodology, Mr. Madeley opined that: (1) Baylor failed to properly design and/or mark the walkway surface of the parking lot; (2) the unsafe condition and/or causative factor was a poorly-marked curb step that appears difficult to visually discriminate under certain conditions; (3) Baylor failed to provide a premises free of recognized and reasonably foreseeable hazards likely to result in death or severe injury to persons using the premises; (4) Baylor failed to establish and/or failed to properly implement the basic elements of premises safety programming; (5) Baylor failed to utilize the core principles of safety engineering and rules of hazard control, relying instead on workers and patrons to cope with unguarded physical hazards rather than removing or safeguarding against those hazards; (6) Baylor apparently failed to properly inspect and evaluate the design and marking of the curb and walkway; (7) Baylor failed to provide a safer reasonably available alternative design; (8) Baylor failed to exercise ordinary care to adhere to authoritative references and standards relating to the hazards that should have been identified; and (9) the above conditions were more than likely producing and proximate causes of the incident and related injuries that occurred to Ms. Burns.

From Mr. Madeley's research and observations of the underlying facts in the case, Mr. Madeley arrived at his conclusions regarding what he considered an unsafe condition—a poorly designed and/or marked curb step—and then made subsequent inferences as to Baylor's failure to remedy the hazard. Mr. Madeley's extensive background in safety engineering and safety management, along with his affidavit testimony concerning the application of his knowledge and experience to the underlying facts, sufficiently demonstrate that his opinions were reliable. The trial court's function was not to determine whether Mr. Madeley's conclusions were correct, but only whether the analysis used to reach them was reliable. *See Gammill,* 972 S.W.2d at 728. After reviewing all of Baylor's contentions, we find that there was no basis for the trial court to have stricken Mr. Madeley's testimony. Accordingly, we conclude that the trial court abused its discretion in excluding Mr. Madeley's testimony under Rule 702. Issue One is sustained.

*Granting of Summary Judgment*

█ In Issue Two, Ms. Burns asserts that the trial court erred in granting summary judgment in favor of Baylor because

there were fact issues regarding whether the curb presented an unreasonable risk of harm and Baylor's actual or constructive knowledge of the condition. Baylor moved for summary judgment on both traditional and no-evidence grounds. Without specifying the basis for its ruling, the trial court granted summary judgment in favor of Baylor. When the summary judgment does not specify the grounds relied on, it will be affirmed on appeal if any of the grounds presented in the motion are meritorious. *See Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

## Standard of Review

The movant for traditional summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Tex.R.Civ.P. 166a(c). A defendant is entitled to summary judgment when he or she disproves, as a matter of law, one of the essential elements of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). In deciding whether there is a disputed material fact issue precluding summary judgment, all admissible evidence favorable to the non-movant must be taken as true; all reasonable inferences must be indulged in favor of the non-movant and all doubts resolved in the non-movant's favor. *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Collins v. County of El Paso,* 954 S.W.2d 137, 145 (Tex.App.-El Paso 1997, pet. denied).

A no-evidence summary judgment is essentially a pretrial directed verdict and, as such, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Wyatt v. Longoria,* 33 S.W.3d 26, 31 (Tex.App–El Paso 2000, no pet.). The party moving for no-evidence

summary judgment must specifically state the elements as to which there is no evidence. Tex.R.Civ.P. 166a(i). The burden then shifts to the non-movant to produce evidence raising a fact issue on the challenged elements. *Id.* A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *See id.; Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997), *cert. denied,* 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). More than a scintilla of evidence exists when reasonable and fair-minded people would differ in their conclusions. *Havner,* 953 S.W.2d at 711. When reviewing a no-evidence summary judgment, we view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id.*

## Challenged Elements of the Premises Liability Claim

■ The elements of a premises liability cause of action are: (1) the owner/operator had actual or constructive knowledge of some condition on the premises; (2) the condition posed unreasonable risk of harm; (3) the owner/operator did not exercise reasonable care to reduce or eliminate the risk of harm; and (4) the owner/operator's failure to use such care proximately caused the plaintiff's injuries. *See Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992); *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex.1983). In its hybrid motion, Baylor urged that, as a matter of law, the curb was not a condition presenting an unreasonable risk of harm and Baylor had no actual or constructive knowledge of the premises defect, if any. Baylor also asserted that there was no evidence of a condition that posed an unreasonable risk of harm and no evidence that Baylor had actual or constructive knowledge of that

condition, if any. We first address the no-evidence grounds contained in Baylor's motion.

### Condition Posing an Unreasonable Risk of Harm

 Ms. Burns argues on appeal that there was evidence that the curb in Baylor's parking garage presented an unreasonable risk of harm because of the lighting, the construction, the method of painting, and the optical illusion it created. Specifically, there was probative evidence that the way the curb was painted posed an unreasonable risk in that it created an optical illusion that there was no curb. "A condition presenting an unreasonably risk of harm is one in which there is such a probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Wyatt v. Furr's Supermarkets, Inc.*, 908 S.W.2d 266, 269 (Tex. App.-El Paso 1995, writ denied), *citing Seideneck v. Cal Bayreuther Assoc.*, 451 S.W.2d 752, 754 (Tex.1970).

In response to Baylor's summary judgment motion, Ms. Burns submitted the following summary judgment evidence: Mr. Madeley's affidavit and curriculum vitae, her deposition with photograph exhibits and the deposition of Keith Howse, the Assistant Director of Public Safety for the Baylor University Medical Center Campus, with photograph exhibits. In her deposition testimony, Ms. Burns was asked to describe the accident. According to Ms. Burns, she and her daughter came off the elevator and were headed to the parking lot. The next thing she knew, she heard her head hit the cement and she was down on the pavement. Ms. Burns stated that she did not see a curb. When asked whether she recalled where she was looking at the time, Ms. Burns stated that she was probably looking straight ahead.

In his deposition, Mr. Howse noted his familiarity with the area where Ms. Burns fell and stated that he conducts a general patrol of that garage several times a week. After reviewing a photograph exhibit, which depicts the area from the perspective of someone coming out of the elevators and walking forward towards her vehicle, Mr. Howse acknowledged that the curb was difficult to see under those conditions as they appear in the photograph.

In her summary judgment evidence, Ms. Burns included numerous photographs of the location of her fall in the Baylor parking garage. The photographs clearly lend support to Ms. Burn's claim that the way the curb and surroundings were painted made that curb difficult to see. Together with deposition testimony by Ms. Burns and Mr. Howse, Ms. Burns produced some evidence that created a fact issue as to whether the curb posed an unreasonable risk of harm.

### Actual or Constructive Knowledge

 The fact that the owner or occupier of a premises created a condition that posed an unreasonable risk of harm may support an inference of knowledge. *Keetch*, 845 S.W.2d at 265. Creating the condition does not establish knowledge as a matter of law for purposes of premises liability, however, creation of the condition is circumstantial evidence of knowledge. *See id.* at 266. In premises cases, constructive knowledge can be established by showing that the condition had existed long enough for the owner or occupier to have discovered it upon reasonable inspection. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102–03 (Tex.2000).

In its motion, Baylor also asserted that there was no evidence that it had actual or constructive knowledge of a condition posing an unreasonable risk of harm. In response, Ms. Burns presented summary

judgment evidence to raise a fact issue as to whether Baylor had constructive knowledge of the condition of the curb. In his deposition testimony, Mr. Howse stated that as Assistant Director of Public Safety at Baylor, he supervises the parking division, which consists of forty personnel who operate the campus parking lots. Mr. Howse is also in charge of physical security and transportation services related to the parking division. Part of Mr. Howse's general supervisory duties include general patrol and personnel review in the parking garage where Ms. Burns fell. Mr. Howse stated that in October 1998, a year before Ms. Burns fell, the parking garage was re-striped. Though Mr. Howse was Assistant Public Safety Director for the parking division at that time, he did not know why the garage was re-striped. Upon viewing a photograph of the area where Ms. Burns fell, as one would exit from the elevators walking forward, Mr. Howse acknowledged that the curb was difficult to see under those conditions as they appeared in the photograph. It is undisputed among the parties that use of the elevator entrance in the parking garage was a principle egress and ingress into the Baylor facility. Mr. Howse regularly patrolled the parking garage for the facility and therefore we can reasonably infer that he had ample opportunities to inspect the re-striped curb and surroundings during the year before Ms. Burns fell.

More than a scintilla of evidence exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711. Viewing the evidence in the light most favorable to Ms. Burns, and disregarding all contrary evidence and inferences, we hold that there was more than a scintilla of evidence as to whether Baylor had constructive knowledge of the curb's dangerous condition.

*See Nixon,* 690 S.W.2d at 548–49. The same evidence precluding no-evidence summary judgment precludes granting traditional summary judgment against Ms. Burns. Accordingly, we find that the trial court erred in granting summary judgment in favor of Baylor. Issue Two is sustained.

We reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

HILL, C.J., (Ret.)(Sitting by Assignment).