Wanda M. PAGE, Appellant,

v.

STATE FARM LLOYDS and Erin
Strachman, Appellees.

No. 10–07–00228–CV.

Court of Appeals of Texas,
Waco.

June 11, 2008.

Rehearing Overruled Aug. 12, 2008.

John F. Melton, Ross Melton PC, Austin, for Appellant.

William A. Kendall, Jr., Dallas, Sydney Hewlett, Shannon Grace Ratliff & Miller LLP, Fort Worth, Levon G. Hovnatanian, Martin Disiere Jefferson Wisdom LLP, Houston, for Appellees.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

The primary issue presented in this appeal is whether the Texas Homeowners Form B (HO–B) insurance policy provides coverage for mold damage resulting from plumbing leakage or similar accidental discharge. The trial court held that no such coverage is provided. We disagree and will reverse and remand.

### Background

Wanda Page discovered mold and water damage in her home in June 2001 and reported it to State Farm. The claim was assigned to State Farm claim specialist Erin Strachan. Strachan had a plumber test Page's plumbing system, which revealed several leaks in the sanitary sewer lines. Strachan retained Industrial Hygiene & Safety Technology, Inc. to perform an indoor environmental quality assessment. Industrial Hygiene found several forms of mold and recommended that both the structure and contents be remediated and some of the contents discarded. After Page provided a remediation estimate, State Farm issued a draft in the amount of $12,644 for remediation and repair of the structure and a separate draft in the amount of $13,631 for remediation of the contents ($12,206) and three months' living expenses ($475 per month) while the work was completed.[1]

In May 2002, Page requested additional funds to replace the carpet because of mold damage, but State Farm refused. The parties exchanged correspondence in which Page continued to claim that State

---

1. State Farm made these payments in January 2002. However, it had already provided several payments to Page for living expenses because her home was uninhabitable.

Farm had not paid sufficient funds to completely remediate the mold. State Farm declined to pay any additional funds without supporting documentation showing that the amounts paid were insufficient to cover the loss.

Page filed suit in September 2004. She alleged claims against State Farm for breach of contract, breach of the duty of good faith and fair dealing, fraudulent misrepresentation, DTPA violations, and Insurance Code violations. She alleged claims against Strachan for DTPA and Insurance Code violations.

One year later, her attorney submitted an additional estimate indicating that the cost for remediation of the attic was $13,042. State Farm tendered payment for this amount a few weeks later.

State Farm and Strachan filed a summary-judgment motion asserting both no-evidence and traditional grounds. State Farm argued that it is entitled to judgment as a matter of law on Page's contract claim because: (1) coverage for mold damage is specifically excluded under the policy; (2) there is no evidence that a covered peril caused the alleged mold damage; and (3) there is no evidence that State Farm owes additional sums under the policy. State Farm argued that Page cannot recover on her extra-contractual claims because she has no viable claim for breach of contract. State Farm and Strachan also urged more specific grounds for summary judgment with regard to the merits of Page's extra-contractual claims. However, because the trial court did not reach the merits of these contentions, we do not address them here.

The court initially denied the defendants' summary judgment motion by written order in May 2006. After the August 2006 decision of the Supreme Court in *Fiess v. State Farm Lloyds*, 202 S.W.3d 744 (Tex.2006), State Farm and Strachan filed a motion asking the trial court to reconsider. On reconsideration, the court granted the motion "regarding any and all claims for mold damage" and rendered a take-nothing judgment in favor of the defendants "for any and all claims for mold damage."

Several months later, the court signed an "Order of Final Judgment" and ordered that, "in accordance with the grant of Defendants' Motion for Summary Judgment, this judgment finally disposes of all parties and all claims in this matter."

## Appellate Issues

Page presents two points of error. The first point includes the following six subpoints by which she challenges the summary judgment:

(1) the Supreme Court's decision in *Fiess* does not universally exclude coverage for mold damage;

(2) there is evidence that damage to the contents of Page's home was caused by accidental discharge from a plumbing, heating, or air-conditioning system and is thus covered by the policy;

(3) there is evidence that State Farm has not fully paid for damages to the contents of Page's home;

(4) there is evidence that damage to the structure was caused by accidental discharge from a plumbing, heating, or air-conditioning system and is thus covered by the policy;

(5) there is evidence that State Farm has not fully paid for damages to the structure; and

(6) because Page's contract claims are viable, State Farm and Strachan were not entitled to summary judgment on her extra-contractual claims.

Page contends in her second point that the court erred by failing to sustain her objection to the defendants' motion for reconsideration of the court's initial summary-judgment ruling.

### Standard of Review

We review a trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). In reviewing a traditional summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 755 (Tex.2007) (per curiam) (citing *Wal–Mart Stores, Inc. v. Spates,* 186 S.W.3d 566, 568 (Tex.2006) (per curiam); *City of Keller v. Wilson,* 168 S.W.3d 802, 822–24 (Tex.2005)). We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See Goodyear Tire,* 236 S.W.3d at 756 (citing *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex.2006) (per curiam); *Spates,* 186 S.W.3d at 568).

We apply the same standard in reviewing a no-evidence summary judgment as we would in reviewing a directed verdict. *See Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 581 (Tex.2006). "We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Id.* at 582. A no-evidence summary judgment will be defeated if the non-movant produces some evidence "raising an issue of material fact" on the elements challenged by the movant. *Id.*

### The Policy

There are two sections of the policy which are pertinent to the parties' dispute. The first is "Section I—Perils Insured Against" which reads as follows:

### COVERAGE A (DWELLING)

We insure against all risks of physical loss to the property described in Section I Property Coverage, Coverage A (Dwelling) unless the loss is excluded in Section I Exclusions.

### COVERAGE B (PERSONAL PROPERTY)

We insure against physical loss to the property described in Section I Property Coverage, Coverage B (Personal Property) caused by a peril listed below, unless the loss is excluded in Section I Exclusions.

1. **Fire and Lightning.**
2. **Sudden and Accidental Damage from Smoke.**
3. **Windstorm, Hurricane and Hail.**
4. **Explosion.**
5. **Aircraft and Vehicles.**
6. **Vandalism and Malicious Mischief.**
7. **Riot and Civil Commotion.**
8. **Collapse of Building** or any part of the building.
9. **Accidental Discharge, Leakage or Overflow of Water or Steam** from within a plumbing, heating or air conditioning system or household appliance.

   A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped.

Exclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss caused by this peril.

10. **Falling Objects.**

This peril does not include loss to property contained in a building unless the roof or outside wall of the building is first damaged by the falling object.

11. **Freezing** of household appliances.

12. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

The second pertinent section of the policy is "Section I—Exclusions," which provides in pertinent part:

1. The following exclusions apply to loss to property described under Coverage A (Dwelling) or Coverage B (Personal Property), but they do not apply to an ensuing loss caused by fire, smoke or explosion.

. . . .

f. We do not cover loss caused by:

(1) wear and tear, deterioration or loss caused by any quality in property that causes it to damage or destroy itself.

(2) rust, rot, mold or other fungi.

(3) dampness of atmosphere, extremes of temperature.

(4) contamination.

(5) rats, mice, termites, moths or other insects.

We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

**Coverage for Mold Damage**

■ Page contends in point 1(a) that State Farm failed to conclusively establish its entitlement to judgment on her contract claims because the Supreme Court's decision in *Fiess* does not universally exclude coverage for mold damage to a dwelling or its contents.

In *Fiess,* the Supreme Court answered a question certified to it by the Fifth Circuit asking whether the ensuing loss provision in Exclusion 1.f (quoted above) "when read in conjunction with the remainder of the policy, provide[s] coverage for mold contamination caused by water damage that is otherwise covered by the policy." *Fiess,* 202 S.W.3d at 745–46 (quoting *Fiess v. State Farm Lloyds,* 392 F.3d 802, 811–12 (5th Cir.2004)).[2] The mold damage at issue in *Fiess* was caused by water leaks in the roof and around some windows. *See Fiess I,* 392 F.3d at 808; *see also Fiess II,* 202 S.W.3d at 750. The Supreme Court concluded that the mold exclusion applied and that the mold damage at issue was not covered. *Fiess II,* 202 S.W.3d at 745. Among other things, the Court held: (1) the mold exclusion is unambiguous; and (2) mold damage is not "water damage." *See id.* at 746–48, 50–51.

State Farm argues that *Fiess* controls this case. Page, however, argues that, because the loss here resulted from plumbing leaks,[3] the Supreme Court's earlier decision in *Balandran v. Safeco Insurance Co. of America,* 972 S.W.2d 738 (Tex.1998), controls and requires coverage.

---

**2.** Hereinafter, we refer to the Fifth Circuit's decision as *"Fiess I"* and the Supreme Court's decision as *"Fiess II."*

**3.** Hereinafter, we use the shorthand term "plumbing leak" to refer to an "accidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air conditioning system or household appliance."

Like *Fiess*, *Balandran* involved a certified question from the Fifth Circuit on an insurance coverage issue. *See Balandran*, 972 S.W.2d at 739; *see also Balandran v. Safeco Ins. Co. of Am.*, 129 F.3d 747, 749 (5th Cir.1997). The question in *Balandran* was whether the HO–B policy provided coverage for damage from foundation movement caused by an underground plumbing leak. *Id.* The Court in *Balandran* determined this question by construing Item 9 of the "Section I—Perils Insured Against" section of the policy in conjunction with Exclusion 1.h, which generally excludes coverage for loss to the dwelling caused by foundation movement.[4] *See Balandran*, 972 S.W.2d at 740–42.

Item 9 provides for coverage of losses resulting from the "[a]ccidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air conditioning system or household appliance." In addition, Item 9 provides that "Exclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss caused by this peril." This latter clause is referred to as the "exclusion repeal provision." *Id.* at 740.

The Court held in *Balandran* that the exclusion repeal provision is ambiguous because it is susceptible to two reasonable interpretations: (1) Safeco's interpretation that it applies to only a loss to personal property caused by a plumbing leak (because of the provision's inclusion under Coverage B applicable to personal property loss); *see, e.g., Sharp v. State Farm Fire & Cas. Ins. Co.*, 115 F.3d 1258, 1262 (5th Cir.1997); or (2) the Balandrans' interpretation that it applies to any covered "loss" caused by a plumbing leak. *See Balandran*, 972 S.W.2d at 740–41.

The Court explained that the Balandrans' interpretation was reasonable because: (1) the exclusion repeal provision applies to a "loss" and "is not expressly limited to 'personal property loss'"; (2) Safeco's interpretation would render a portion of the provision meaningless because Exclusion 1.h applies to damage only to the dwelling; and (3) the HO–B policy, which was promulgated by an advisory committee in 1990, was required by the Board of Insurance to provide the same coverage as previously available, and coverage for foundation damage resulting from a plumbing leak was unambiguously provided before 1990. *Id.* at 741–42.

■ When an insurance contract is susceptible to two or more reasonable interpretations, it is ambiguous, and it must be construed in favor of the insured so long as that construction is not unreasonable. *Fiess II*, 202 S.W.3d at 746; *Balandran*, 972 S.W.2d at 741. Applying these settled principles, the Supreme Court has determined that the exclusion repeal provision, which lies at the heart of Page's dispute with State Farm, is ambiguous. *Balandran*, 972 S.W.2d at 741. This provision has not lost its ambiguous character merely by the passage of time. Therefore, following *Balandran* as we are obligated to do, we hold that the exclusion repeal provision remains ambiguous. *Id.; see also Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) ("It is not the function of a court of

---

4. Exclusion 1.h provides:
   We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.

   We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

appeals to abrogate or modify established precedent. That function lies solely with this Court. Generally, the doctrine of stare decisis dictates that once the Supreme Court announces a proposition of law, the decision is considered binding precedent."). "Accordingly, we hold that exclusion 1([f]) in the 1991 Texas Standard Homeowner's Policy—Form B does not apply to loss caused by the accidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air conditioning system or household appliance." *Balandran,* 972 S.W.2d at 742. *Contra Carrizales v. State Farm Lloyds,* 518 F.3d 343, 348 (5th Cir.2008) (per curiam).[5]

With regard to personal property within the dwelling, State Farm contends that no coverage is provided because mold is not a named peril. We disagree. The policy on its face provides coverage for any "physical loss ... caused by a peril listed below," including in particular a loss caused by the "accidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air conditioning system or household appliance." The "named peril" in this instance is the plumbing leak, not

the resultant loss. *See de Laurentis v. United Servs. Auto Ass'n,* 162 S.W.3d 714, 724–25 (Tex.App.-Houston [14th Dist.] 2005, pet. denied).[6] Thus, if Page can establish that mold damage to personal property in her home was caused by a plumbing leak, this loss would be covered under the policy. *Id.*

For the foregoing reasons, we hold as a matter of law that the HO–B policy covers any loss (including mold) to the dwelling or its contents resulting from a plumbing leak, subject to the limits of liability shown on the declaration page of Page's policy ($91,000 for the dwelling and $54,600 for personal property). Point 1(a) is sustained.

### Summary–Judgment Record

The remainder of Page's appellate issues regarding her breach-of-contract claim depend on whether she produced some evidence "raising an issue of material fact" on the elements challenged by State Farm. *See Mack Trucks,* 206 S.W.3d at 582. Before we can address these issues, we must determine what evidence we may consider.

Page relies on the affidavits and/or reports of Peter de la Mora, Gary Penning-

---

5. In addition to the Fifth Circuit's published decision in *Carrizales,* State Farm cites several unpublished federal decisions and the recent decision by the Fourteenth Court of Appeals in *Justice v. State Farm Lloyds Ins. Co.,* 246 S.W.3d 762 (Tex.App.-Houston [14th Dist.] 2008, no pet.), as supporting its interpretation of the policy. However, *Justice* is inapposite because it involved mold damage resulting from a tree which had fallen on the Justices' home. *Id.* at 764. Thus, the Justices' claim was governed by Item 10 of the "Section I—Perils Insured Against" in the HO–B policy for "Falling Objects." Unlike the "plumbing leak" clause applicable in *Balandran* and in Page's case, the "falling objects" clause does not contain an exclusion repeal provision. The federal courts necessarily followed the lead of the Fifth Circuit on this issue. They are not binding on this Court and we do not find them to be persuasive.

*See City of Carrollton v. Singer,* 232 S.W.3d 790, 797 n. 6 (Tex.App.-Fort Worth 2007, pet. denied).

6. State Farm argues that *de Laurentis* is "significantly different" because it involved a renters policy rather than a homeowners policy. *See de Laurentis v. United Servs. Auto Ass'n,* 162 S.W.3d 714, 716 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). Although State Farm is correct about the types of policies involved, it's argument is without merit because the pertinent provisions of the renters policy and of the homeowners policy are identical. And in *de Laurentis,* the Fourteenth Court specifically rejected the argument which State Farm presents here, namely that there is no coverage because mold is not a "named peril." *Id.* at 724–25.

ton, AirTech Environmental, Inc., RCI Environmental, Inc., and Risk Management & Engineering, Ltd. The Risk Management report is attached to State Farm's summary-judgment motion. Page tendered the affidavits and reports from Pennington, AirTech, and RCI in support of her original response to State Farm's summary-judgment motion. And Page tendered de la Mora's affidavit (accompanied by a report from PE Services) in support of her response to State Farms' motion to reconsider the summary-judgment motion.[7]

State Farm responds in its brief that the affidavit of de la Mora cannot be considered because the trial court granted State Farm's motion to strike de la Mora after Page failed to produce him for deposition in accordance with a pretrial discovery order. State Farm's also contends in its brief that Page cannot rely on the RCI report as summary-judgment evidence because she did not designate RCI or its president as an expert witness. State Farm does not respond in its brief to the remaining evidence relied on by Page other than to say that the AirTech and Risk Management reports are not sufficient to raise fact-issues on Page's claims.

In the trial court, State Farm objected to de la Mora's affidavit and argued that it should be excluded because: (1) it was not timely filed under Rule 166a(c); (2) the court had previously struck de la Mora as an expert; (3) it is "conclusory in nature" because it "fails to raise a fact issue as to any covered loss for which payment has not been made"; and (4) it is irrelevant and unfairly prejudicial.

State Farm objected that Pennington's affidavit and report (the "Pennington evidence") should be excluded because: (1)

they were untimely under Rule 166a(c); (2) they are based in part on a company's report whose testimony the court had previously struck (at the same time as de la Mora's); (3) they are "conclusory in nature" as they fail "to raise a fact issue as to any covered loss for which payment has not been made"; (4) they are irrelevant and unfairly prejudicial; (5) Page failed to establish Pennington's qualifications as an expert or the reliability of his opinion; and (6) Pennington's report contains hearsay.

State Farm objected to the AirTech report because "it constitutes inadmissible hearsay." And State Farm objected to the RCI report prepared by Greg Upah because Page failed to designate Upah as an expert witness.

The trial court did not make any written rulings on State Farm's objections, neither when it initially denied the summary-judgment motion, nor when it later granted the motion on reconsideration. The trial court's summary-judgment rulings do not, standing alone, constitute implicit rulings on State Farm's objections. *See Stewart v. Sanmina Tex. L.P.*, 156 S.W.3d 198, 206–07 (Tex.App.-Dallas 2005, no pet.); *Allen ex rel. B.A. v. Albin*, 97 S.W.3d 655, 663 (Tex.App.-Waco 2002, no pet.).

■ Objections to the form of summary-judgment evidence are preserved for appellate review only if those objections are made and ruled on in the trial court. *See Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist.*, 127 S.W.3d 235, 241 (Tex.App.-Waco 2003, no pet.); *Trusty v. Strayhorn*, 87 S.W.3d 756, 762 (Tex.App.-Texarkana 2002, no pet.). By contrast, objections to the substance of such evidence may be raised for the first time on appeal. *See Choctaw Props.*, 127 S.W.3d at 241;

7. Page also resubmitted the Pennington affidavit and accompanying reports with her re-

sponse to State Farm's motion to reconsider.

*Trusty,* 87 S.W.3d at 765. Therefore, because the trial court did not rule on State Farm's objections, we may consider only those objections which challenge the substance of Page's summary-judgment evidence.

■ The following of State Farm's objections challenge the form of the evidence: (1) not timely filed under Rule 166a(c); (2) affiant had been previously struck; (3) relies on a witness who had been previously struck; (4) irrelevant and unfairly prejudicial; (5) affiant was not designated as an expert; and (6) hearsay. *See Choctaw Props.,* 127 S.W.3d at 241; *Trusty,* 87 S.W.3d at 764; *see also Tri–Steel Structures, Inc. v. Baptist Found. of Tex.,* 166 S.W.3d 443, 448 (Tex.App.-Fort Worth 2005, pet. denied) ("A defect is substantive if the summary judgment proof is incompetent; it is formal if the summary judgment proof is competent, but inadmissible."). Because the trial court did not rule on State Farm's objections, State Farm has failed to preserve its complaint regarding these objections to the form of Page's summary-judgment evidence, and these objections do not bar our consideration of Page's evidence in evaluating the propriety of the court's summary judgment. *Stewart,* 156 S.W.3d at 207; *Trusty,* 87 S.W.3d at 764.

The following of State Farm's objections challenge the substance of Page's summary-judgment evidence: (1) the evidence is "conclusory" because it "fails to raise a fact issue as to any covered loss for which payment has not been made"; and (2) Page failed to establish Pennington's qualifications as an expert or the reliability of his opinion. *See Choctaw Props.,* 127 S.W.3d at 241; *Trusty,* 87 S.W.3d at 765; *Crow v. Rockett Special Util. Dist.,* 17 S.W.3d 320, 324 (Tex.App.-Waco 2000, pet. denied). Thus, we may address these complaints for the first time on appeal. *Id.*

■ State Farm complains that de la Mora's affidavit and the Pennington evidence are "conclusory in nature" because they fail "to raise a fact issue as to any covered loss for which payment has not been made." Summary-judgment evidence is considered "conclusory" if it "does not provide the underlying facts to support the conclusion." *Choctaw Props.,* 127 S.W.3d at 242 (quoting *Dolcefino v. Randolph,* 19 S.W.3d 906, 930 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (other citations omitted)). Rather than objecting to the lack of support for the conclusions set forth in the challenged affidavits and reports, State Farm's objection complains that this evidence fails to raise a fact issue. Thus, this is not a true objection to the "conclusory nature" of the evidence but to the efficacy of the evidence. Therefore, this objection does not bar our consideration of Page's evidence in evaluating the propriety of the court's summary judgment.

■ Finally, State Farm objected that the Pennington evidence is inadmissible because Page failed to establish Pennington's qualifications as an expert or the reliability of his opinion. Under Rule of Evidence 702, an expert is qualified "by knowledge, skill, experience, training, or education." Tex.R. Evid. 702. To be admissible, the expert must be qualified and his opinion must be relevant and have a reliable foundation. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 499 (Tex.2001).

■ "In deciding if an expert is qualified, trial courts 'must ensure that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion.'" *Id.* (quoting *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 719 (Tex.

1998)); [8] *Llanes v. Davila,* 133 S.W.3d 635, 639 (Tex.App.-Corpus Christi 2003, pet. denied). Here, Pennington sets out his qualifications in the first numbered paragraph of his affidavit:

> I am a licensed public insurance adjuster and a licenced [sic] Mold Assessment Consultant in Texas. I received a Bachelor of Science from Oral Roberts University in Tulsa Oklahoma in May 1988. I am the owner of Gary Pennington & Company with more that twelve years of experience assisting property owners with insurance claims. This includes providing estimates for the reasonable and necessary costs of repairing residences and cleaning personal contents. During my career, I have performed investigations of hundreds of homes to determine the reasonable and necessary cost of repair.

Based on the facts quoted, we conclude that Pennington was qualified to provide expert testimony in this suit. *See United Servs. Auto. Ass'n v. Pigott,* 154 S.W.3d 625, 629 (Tex.App.-San Antonio 2003, judgm't withdrawn by agr.); *Llanes,* 133 S.W.3d at 640.

When the reliability of an expert's opinion is challenged, we are not to determine whether the expert's conclusions are correct but whether the analysis employed to reach those conclusions is reliable. *Kerr–McGee Corp. v. Helton,* 133 S.W.3d 245, 254 (Tex.2004); *Pigott,* 154 S.W.3d at 630. Expert testimony may be considered unreliable if:

(1) if it is not grounded " 'in the methods and procedures of science' and is no more than 'subjective belief or unsupported speculation.' "; *Kerr–McGee,* 133 S.W.3d at 254 (quoting *Exxon Pipeline Co. v. Zwahr,* 88

S.W.3d 623, 629 (Tex.2002) (quoting *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 590, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993))); or

(2) " 'there is simply too great an analytical gap between the data and the opinion proffered.' " *Id.* (quoting *Gammill,* 972 S.W.2d at 726 (quoting *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 519, 139 L.Ed.2d 508 (1997))).

The first of these alternatives generally applies to scientific expert testimony. *See In re Est. of Robinson,* 140 S.W.3d 782, 790 (Tex.App.-Corpus Christi 2004, pet. denied); *Taylor v. Am. Fabritech, Inc.,* 132 S.W.3d 613, 618–19 (Tex.App.-Houston [14th Dist.] 2004, pet. denied); *Burns v. Baylor Health Care Sys.,* 125 S.W.3d 589, 596 (Tex.App.-El Paso 2003, no pet.). Pennington's testimony is nonscientific expert testimony, and so the reliability of his opinion is determined by evaluating whether "there is simply too great an analytical gap between the data and the opinion proffered." *See Kerr–McGee,* 133 S.W.3d at 254 (quoting *Gen. Elec. Co.,* 522 U.S. at 146, 118 S.Ct. at 519; *Gammill,* 972 S.W.2d at 726); *Robinson,* 140 S.W.3d at 790; *Taylor,* 132 S.W.3d at 619; *Burns,* 125 S.W.3d at 596–97.

Pennington stated in his affidavit that he prepared two comprehensive estimates, one providing an estimate of the reasonable and necessary costs for removal and remediation of water- and mold-damaged areas inside Page's home, and the second providing an estimate of the reasonable and necessary costs for the "buildback." Pennington generally based his opinions on his "education, training,

---

**8.** The original source for the internal quotation appears to be *Broders v. Heise. See Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 719 & n. 15 (Tex.1998) (quoting *Broders,* 924 S.W.2d 148, 152 (Tex.1996)).

[and] experience." In addition, Pennington's opinions were based on: (1) a visual inspection of the home; (2) observation of the damage to the interior of the home; (3) data collected during the inspections; (4) calculation of the reasonable and necessary costs of repair using Xactware Xactimate estimating software, which is "generally accepted in the insurance and construction industries" and which is "commonly used by insurance adjusters in the State of Texas"; (5) Pennington's personal knowledge of reasonable and necessary costs of repair in Johnson County; and (6) the specific repair recommendations contained in the PE Service report prepared by de la Mora and others.

Pennington based his opinions on his knowledge, training, and experience with assessing property damage in the context of insurance claims, his own inspection of Page's residence, the data he and others gathered in inspecting the premises, and the information produced by a software program relied on by the insurance and construction industries. Thus, we conclude that Pennington's testimony is sufficiently reliable because there does not appear to be any significant "analytical gap" between Pennington's opinions and the bases for those opinions. *See Robinson,* 140 S.W.3d at 792; *Taylor,* 132 S.W.3d at 620; *Pigott,* 154 S.W.3d at 631–32; *see also United Servs. Auto. Ass'n v. Croft,* 175 S.W.3d 457, 464–66 (Tex.App.-Dallas 2005, pet. denied).

Therefore, because State Farm failed to preserve its objections to the form of the Pennington evidence and because State Farm's objections to the substance of the evidence are without merit, we will consider this evidence in evaluating the propriety of the court's summary judgment. *See Stewart,* 156 S.W.3d at 207; *Trusty,* 87 S.W.3d at 764.

## Causation

Page contends in points 1(b) and 1(d) that the court erred by granting a no-evidence summary judgment in State Farm's favor because there is some evidence in the record that the damages to the dwelling and contents were caused by a plumbing leak.

State Farm argued in the summary-judgment motion that there is no evidence that a plumbing leak was the sole cause of the mold damage to Page's home. Rather, State Farm contended that, because the damage resulted from both covered and non-covered perils, Page bore the burden of segregating her damages so a factfinder could allocate those damages caused solely by the covered peril. In particular, State Farm's experts provided opinion testimony that the mold in Page's residence was caused not only by a plumbing leak, but also by lack of maintenance and cleaning, poor climate control, structural defects, and degradation of the structure itself.

Page refers to de la Mora's affidavit in which he stated, "[I]t is my opinion that plumbing and air-conditioning leaks have caused water and mold damage to the Page residence and contents that requires repair." Page also refers to an Environmental Sample Analysis Report prepared by Greg Upah of RCI Environmental which she attached to her summary-judgment response. Upah concluded that all but certain mold damage in Page's garage was caused by plumbing leaks. According to Upah:

> the microbiological organism contamination present throughout the Wanda Page residence located at ... was caused by leaks in the sanitary sewer system line and air handling unit air conditioning evaporator coil drain line in the crawl space under the residence, and at the master bathroom shower stall faucet, both supply water lines to the hall-

way bathroom sink cabinet and elevated relative humidity levels in the residence caused by the water leaks at the residence. The microbiological contamination amplification on the gypsum board ceiling in the attached garage of the residence appears to have been caused by a roof leak.

Viewing the evidence in the light most favorable to Page, we hold that Page produced some evidence "raising an issue of material fact" regarding the portion of mold damage to her dwelling that was caused by plumbing leaks. *See Mack Trucks,* 206 S.W.3d at 582.

State Farm similarly contends that there is no evidence that a plumbing leak was the sole cause of the mold damage to any personal property in Page's home. Page responds that we should not address this contention because State Farm did not present this argument in its summary-judgment motion. *See Nat'l Café Servs., Ltd. v. Podaras,* 148 S.W.3d 194, 196 n. 1 (Tex.App.-Waco 2004, pet. denied) (on appeal from summary judgment, "[w]e consider only those grounds 'the movant actually presented to the trial court' in the motion") (quoting *Fletcher v. Edwards,* 26 S.W.3d 66, 74 (Tex.App.-Waco 2000, pet. denied) (quoting *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996))). We agree.

State Farm argued in the summary-judgment motion that "there is no evidence in this case to raise an issue of material fact that a plumbing leak—or any other covered water loss—was the sole cause of mold damage to Page's *residence.*" (emphasis added). State Farm elaborates on the next page, "the amounts State Farm paid for rebuild *of the structure* were sufficient." (emphasis added).

Therefore, because State Farm did not claim in its summary-judgment motion that there is no evidence that a plumbing leak was the sole cause of the mold damage to any personal property in Page's home, we do not address this issue on appeal. *Id.*

Points 1(b) and 1(d) are sustained.

### Amount of Damages

■ Page contends in points 1(c) and 1(e) that the court erred by granting a no-evidence summary judgment in State Farm's favor because there is some evidence in the record that State Farm has not fully paid for damages to the dwelling and its contents.

Regarding damages to the dwelling, Page refers to Pennington's estimates that it would cost $54,527 "for removal and/or remediation of the water and mold damage to the home" and an additional $25,496 "for the rebuild." Attached to Pennington's affidavit were: (1) an estimate prepared by Remediation Technologies, LLC providing a detailed, room-by-room break down of the costs for removal and remediation; and (2) the "buildback" estimate prepared by Gary Pennington & Co. providing a similarly detailed break down of the costs of repair after removal and remediation were complete. State Farm's own summary-judgment evidence establishes that it has paid $25,686 to date for damages to the dwelling.

■ State Farm's only response in its appellate brief to this aspect of Page's claim is that Page failed to produce summary-judgment evidence segregating the mold damage attributable to plumbing leaks from the mold damage attributable to other causes not covered by the policy. *See State Farm Fire & Cas. Co. v. Rodriguez,* 88 S.W.3d 313, 320–21 (Tex.App.-San Antonio 2002, pet. denied).

Under the doctrine of concurrent causes, when "covered and non-covered perils combine to create a loss, the in-

sured is entitled to recover only that portion of the damage caused solely by the covered peril(s)." *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 302–03 (Tex.App.-San Antonio 1999, pet. denied). "Because an insured can recover only for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof." *Id.* at 303. "To this end, the insured must present some evidence upon which the jury can allocate the damage attributable to the covered peril." *Id.* "Although a plaintiff is not required to establish the amount of his damages with mathematical precision, there must be some reasonable basis upon which the jury's finding rests." *Id.* at 304.

*Rodriguez*, 88 S.W.3d at 320–21.

Upah's report provides some evidence that all but certain mold damage in Page's garage was caused by plumbing leaks. The reports attached to Pennington's affidavit provide detailed, room-by-room estimates of the costs for removal, remediation, and repair. *Cf. Wallis*, 2 S.W.3d at 304 ("The jury heard no testimony regarding how much of the Wallises' damage was caused by the plumbing leaks."). Viewing these reports and the other evidence in the light most favorable to Page, we hold that Page produced some evidence "raising an issue of material fact" regarding (1) the reasonable and necessary costs to repair the mold damage to her dwelling that was caused by plumbing leaks and (2) the fact that State Farm's payments to-date are less than the sum of those costs. *See Mack Trucks*, 206 S.W.3d at 582.

With regard to the contents, Page likewise refers to Pennington's estimate that it would cost $26,689 for "contents cleaning." Pennington's affidavit in this regard is supported by the Remediation Technolo-

gies estimate, which provides an estimate of the cost for decontamination, removal, and storage of the affected contents. State Farm's own summary-judgment evidence establishes that it has paid $12,206 to date for damages to the contents. Viewing this evidence in the light most favorable to Page, we hold that Page produced some evidence "raising an issue of material fact" regarding (1) the reasonable and necessary costs to restore the affected contents of her home and (2) the fact that State Farm's payments to-date are less than the sum of those costs. *Id.*

Points 1(c) and 1(e) are sustained.

### Extra–Contractual Claims

Page contends in point 1(f) that because her contract claims are viable, State Farm and Strachan were not entitled to summary judgment on her extra-contractual claims.

With regard to these claims, State Farm first argued in its summary-judgment motion that Page cannot prevail on her extra-contractual claims because she cannot prevail on her contract claim. State Farm also presented several arguments on the merits of Page's extra-contractual claims. The trial court decreed in its order granting State Farm's summary-judgment motion that Page "take nothing on all of her causes of action against State Farm Lloyds and Erin Strachan for any and all claims for mold damage." This ruling is necessarily limited to Page's contract claim because that is the only claim in which she seeks to recover for the mold damage in her home. State Farm recognized as much in its Request for Entry of Final Judgment. In that pleading, State Farm advised the court, "Plaintiff's claims in this matter all arise out of and are dependent upon her insurance claim [*i.e.*, her contract claim] for mold damage to her home." Thus, State Farm argued that the court's

interlocutory summary judgment necessarily "dispose[d] of all claims of all parties in this matter" and requested that the court enter "an order clarifying that fact."

At a hearing on State Farm's request for entry of a final judgment, the parties focused on whether Page still had a viable contract claim for water damage to her home, impliedly agreeing that, without a viable contract claim, her extra-contractual claims could not stand. *See Progressive County Mut. Ins. Co. v. Boyd,* 177 S.W.3d 919, 921 (Tex.2005) (per curiam). After receiving letter briefs from the parties, the court signed its Order of Final Judgment. Therefore, consistent with the pleadings, the only ground on which the trial court rendered a take-nothing judgment on Page's extra-contractual claims was the court's determination that she take nothing on her contract claim. For this reason, we will not address State Farm's various challenges to the merits of Page's extra-contractual claims. *Cf. Cincinnati Life Ins.,* 927 S.W.2d at 626 ("the appellate court may consider other grounds that the movant preserved for review and trial court did not rule on in the interest of judicial economy").

We have determined that Page's contract claim is viable. Accordingly, point 1(f) is sustained.

## Claims Against Strachan

Strachan contends that the judgment in her favor must be affirmed because: (1) Page does not argue in her brief that the court erred by rendering judgment in Strachan's favor, (2) Page's "general point of error" "is no substitute for an argument" that the court so erred; and (3) Page did not argue in her summary-judgment response that Strachan was not entitled to judgment. We reject Strachan's hypertechnical argument. *See Higgins v. Randall County Sheriff's Office,* 257 S.W.3d 684, 688 (Tex.2008) ("Our decision 'reflect[s] the policy embodied in our appellate rules that disfavors disposing of appeals based upon harmless procedural defects.'") (quoting *Verburgt v. Dorner,* 959 S.W.2d 615, 616 (Tex.1997)).

Page necessarily asserted only extra-contractual claims against Strachan because Strachan is not a party to the insurance contract. She unambiguously stated on the first page of her summary-judgment response that she was using the terms "defendants" and "State Farm" to "refer collectively to **State Farm Lloyds and Erin Strachan.**" In the initial paragraph of the section of her response addressing her extra-contractual claims, Page argued:

> State Farm *[i.e., State Farm and Strachan]* claims that the Extra–Contractual Claims fail along with the Breach of Contract Claim. State Farm's *[i.e., State Farm's and Strachan's]* allegations concerning **Breach of Contract** are invalid, therefore State Farm's *[i.e., State Farm's and Strachan's]* argument concerning Extra–Contractural [sic] Claims is also invalid and summary judgment should not be granted.

Page employs a similar approach in her appellate brief. In the statement of the case, she explains that her claims are "against State Farm Lloyds and Erin Strachan (hereinafter collectively referred to as 'State Farm')." *See* TEX.R.APP. P. 38.1(d). And the first paragraph of the argument portion of Page's brief addressing her extra-contractual claims reads as follows:

> Other than arguing that Plaintiff's misrepresentation claims failed due to lack of evidence, State Farm's *[i.e., State Farm's and Strachan's]* only argument to the trial court regarding Plaintiff's extra-contractual claims was that since

272

*Fiess* barred coverage for mold damage, that all of the extra-contractual claims failed as well. (III C.R. at 555–61) As shown above, however, *Fiess* does not completely bar Plaintiff's causes of action for mold damage, and as such State Farm's [*i.e.,* State Farm's and Strachan's] brief argument regarding Plaintiff's extra-contractual claims is incorrect.

Page's summary-judgment response and her appellate brief both address whether Strachan has established her entitlement to judgment as a matter of law on Page's extra-contractual claims. Page is plainly challenging the judgment rendered in favor of Strachan. Accordingly, we reject Strachan's contention that the judgment should be affirmed as to her because of perceived deficiencies in Page's trial and appellate pleadings.

**Motion for Reconsideration**

Page contends in point 2 that the court erred by failing to sustain her objection to State Farm's motion for reconsideration. Because we have sustained Page's other points, we need not address this one. *See* Tex.R.App. P. 47.1.

**Conclusion**

Following *Balandran,* we hold that the HO–B policy covers mold damage to the dwelling or its contents which results from an "accidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air conditioning system or household appliance." Viewing the summary-judgment evidence in the light most favorable to Page, we hold that Page produced some evidence raising issues of material fact regarding: (1) the portion of mold damage to her dwelling that was caused by plumbing leaks; (2) the reasonable and necessary costs to repair the mold damage to her dwelling and its con-

tents that was caused by those leaks; and (3) the fact that State Farm's payments to-date are less than the sum of those costs. Finally, we hold that, because Page's contract claims for mold damage is viable, the court erred by rendering a take-nothing judgment in favor of State Farm and Strachan on Page's extra-contractual claims.

Therefore, we reverse the judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

Chief Justice GRAY dissents. A separate opinion will not issue.